SPILLANE WEINGARTEN LLP
Jay M. Spillane (Bar No. 126364)
jspillane@spillaneweingarten.com
Alex M. Weingarten (Bar No. 204410)
aweingarten@spillaneweingarten.com
Eric B. Carlson (Bar No. 193401)
ecarlson@spillaneweingarten.com
1100 Glendon Avenue, Suite 1200
Los Angeles, California 90024
(310) 229-9300
(310) 229-9380 (fax)

INITIATIVE LEGAL GROUP APC
Marc Primo (Bar No. 216796)
mprimo@initiativelegal.com
Darrel Menthe (Bar No. 186252)
dmenthe@initiativelegal.com
Gene Williams (Bar No. 211390)
gwilliams@initiativelegal.com
Mark Pifko (Bar No. 228412)
mpifko@initiativelegal.com
1800 Century Park East, 2nd Floor
Los Angeles, CA 90067
(310) 556-5637
(310) 861-9051 (fax)

Attorneys for Plaintiffs and Class Members

FILED
2010 NOV 22  A 11: 58
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
N.D. CA-S.J.

E-filing

ADR

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

CV10-05282  HRL

| | |
|---|---|
| ROBYN COHEN, SHANNON STOLLER, CHRISTOPHER MARSHALL, BRYAN SIGLOCK, and DEBRA LEWIN, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>FACEBOOK, INC., a Delaware corporation,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR:**<br>(1) **VIOLATION OF STATUTORY RIGHT OF PUBLICITY;**<br>(2) **VIOLATION OF COMMON LAW RIGHT OF PUBLICITY;**<br>(3) **VIOLATION OF 15 USC 1125(a)(1)(A)**<br>(4) **VIOLATION OF BUSINESS & PROFESSIONS CODE § 17200**<br><br>**FRCP 23**<br><br>CLASS ACTION<br><br>DEMAND FOR JURY TRIAL |

Class Action Complaint

Plaintiffs Robyn Cohen, Shannon Stoller, Christopher Marshall, Bryan Siglock, and Debra Lewin file this Class Action Complaint both individually and on behalf of all other similarly situated U.S. residents whose names or likenesses were utilized by Defendant Facebook Inc. ("Facebook") without their knowledge or consent to advertise Facebook's "Friend Finder" service (collectively "Plaintiffs"). Plaintiffs aver:

### Jurisdiction and Venue

1. This Court has original subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2), in that this is a class action, the matter in controversy exceeds the sum of $5,000,000 and members of the class of plaintiffs are citizens of a state different from the citizenship of Facebook. This Court also has subject matter jurisdiction over this action under 28 U.S.C. § 1338, in that this action arises under the Lanham Act.

2. Venue is proper in this judicial district under 28 U.S.C. § 1391(a), in that this is a district in which Facebook resides and in which a substantial part of the events or omissions giving rise the claims averred herein occurred.

### IntraDistrict Assignment

3. The San Jose Division is the Division to which this case should be assigned, in that Facebook is located in Palo Alto, Santa Clara County, California.

### Summary of Action

4. This is an action for violation of statutory and common law rights of publicity, Section 43(a) of the Lanham Act and Business & Professions Code § 17200, arising from, on information and belief, Facebook's practice of using names, photographs and likenesses of Facebook users to advertise Facebook's "Friend Finder" service, without the knowledge or consent of such users.

5. Facebook operates the world's leading Internet social networking website, www.facebook.com ("Facebook.com" or the "Website"). With tens of

- 1 -

Class Action Complaint

millions of unique users visiting the Website every day, Facebook.com is among the top five most visited websites in the United States.

6. Facebook invites prospective users to create a user profile page ("Profile"). Profiles typically include photographs of users and their family and friends, and users' personal information. Facebook encourages Facebook.com users to build a network of "friends" who are also using Facebook. As users build their network of friends on, and spend more time looking at, Facebook.com, users are more likely to encourage others to become Facebook.com users as well. In this fashion, according to Facebook it now enjoys in excess of 500 million active users.

7. Facebook has a simple and direct commercial motivation to encourage users to build a network of friends. Users with more friends on Facebook.com are likely to become more engaged in, and therefore spend more time on, Facebook.com. Users who enjoy using Facebook.com to connect to friends may encourage others to become users of Facebook.com, so that they too can find and connect with friends. Facebook sells advertising in the forms of banners that appear on a user's page, which when clicked, forward the user to the advertiser's site. The greater Facebook's user base, and the more time each user spends on the site, the more advertisements Facebook can sell. Also, as the number of Facebook.com users grows, so too does the time each user spends on Facebook.com. As a direct and proximate result, Facebook can sell more advertisements and charge more for those advertisements, thereby increasing the company's profits.

8. Facebook has parlayed the exponentially growing audience of Facebook.com into astonishing growth in advertisements and related revenues. Only five years after its launch in 2004, Facebook reported gross revenues of $800 million in 2009. While Facebook is not yet publicly traded, Facebook shares were reported to be traded privately at in excess of $75 per share, resulting in a reported company valuation of some $33 billion, more than eBay and Dell, and twice that of Yahoo!

- 2 -

Class Action Complaint

9. Facebook has promulgated a set of lofty "Facebook Principles" on its website in order to promote an aura of outstanding citizenship, including statements that it is "building Facebook to make the world open and transparent," and that "[p]eople should have the freedom to decide with whom they will share their information, and to set privacy controls to protect those choices."

10. However, as alleged herein, the tantalizing and direct connection between growth in numbers of users and untold wealth has caused Facebook to turn its back on these principles. As alleged herein, Facebook has made cynical and surreptitious business decisions to misappropriate its users' names, photographs and likeness to promote use of its "Friend Finder" service. "Friend Finder" primarily features a potentially intrusive utility that, on information and belief, uploads users' computer contacts to a database maintained by Facebook. Facebook searches for common uploaded contacts as a basis to suggest new "friends" to its users. On information and belief, Facebook also uses the uploaded contacts to solicit persons who are not yet Facebook users to join.

11. To promote the use of its Friend Finder service, Facebook has and continues to post the names and likenesses of a user's friends on that user's Facebook.com page, using words to the effect that the user's friends "found friends using the Friend Finder," suggesting that the user also "Give it a try!" The friends whose names and likeness are used to promote Friend Finder have not actually consented to use their names and likenesses to endorse Facebook's Friend Finder service, nor does Facebook disclose to such users that Facebook intended to use their name and likeness to promote the Friend Finder service to others. Furthermore, the friends whose names and likenesses are used to promote the Friend Finder service often never actually used the contacts upload feature.

12. The misappropriation of names, photographs and likenesses alleged herein has a direct commercial purpose, namely, to increase Facebook's user base,

- 3 -

Class Action Complaint

thereby increasing the intensity of such use, all for the purpose of generating additional revenues.

13. In each instance in which Facebook uses the name and likeness of a Facebook.com user to promote the Friend Finder service without consent, Facebook violates users' statutory and common law rights of publicity, creates a false endorsement and, in so doing, commits unfair competition, all in an effort to increase Facebook's already massive user reach and the corresponding advertising revenue. As a consequence of these unauthorized solicitations, Plaintiffs have suffered actual injury-in-fact by having their name and likeness misappropriated without their knowledge or consent as part of Facebook's Friend Finder solicitations

## The Parties

14. Plaintiff Robyn Cohen ("Cohen") is an individual residing in Burbank, California. Cohen is a Facebook user who received Facebook's Friend Finder solicitation and whose name and likeness was used without consent to promote Facebook.com's Friend Finder service.

15. Plaintiff Shannon Stoller ("Stoller") is an individual residing in Marin County, California. Stoller is a Facebook user who has received Facebook's Friend Finder solicitation and whose name and likeness was used without consent to promote Facebook.com's Friend Finder service.

16. Plaintiff Christopher Marshall ("Marshall") is an individual residing in Mission Viejo, California. Marshall is a Facebook user who has received Facebook's Friend Finder solicitation and whose name and likeness was misappropriated in connection with Facebook's Friend Finder service.

17. Plaintiff Bryan Siglock ("Siglock") is an individual residing in Tustin, California. Siglock is a Facebook user who has received Facebook's Friend Finder solicitation and whose name and likeness was misappropriated in connection with Facebook's Friend Finder service.

- 4 -

Class Action Complaint

18. Plaintiff Debra Lewin ("Lewin") is an individual residing in North Hollywood, California. Lewin is a Facebook user who has received Facebook's Friend Finder solicitation and whose name and likeness was misappropriated in connection with Facebook's Friend Finder service. Collectively, Plaintiffs Cohen, Stoller, Marshall, Siglock and Lewin may be referred to herein as the "named plaintiffs."

19. On information and belief, Facebook is a corporation organized and existing under the laws of the state of Delaware, with its corporate headquarters and principal place of business located at 1601 S. California Avenue, Palo Alto, California 94304.

**Facebook.com and Advertising**

20. Facebook operates Facebook.com. According to Facebook: "Facebook is a social utility that helps people communicate more efficiently with their friends, family and coworkers. The company develops technologies that facilitate the sharing of information through the social graph, the digital mapping of people's real-world social connections. Anyone can sign up for Facebook and interact with the people they know in a trusted environment." http://www.facebook.com/press/info.php?factsheet.

21. Facebook invites prospective users to create a Profile on Facebook.com, which includes personal photographs and information. Facebook then encourages Facebook.com users to build a network of "friends" who have also established Facebook.com Profiles. In this fashion a Facebook.com user can connect with classmates, co-workers, colleagues and others. Once a Facebook.com user approves a friend, photographs and information posted by that user is automatically added to the user's Profile.

22. In Facebook's own words: "Facebook, the product, is made up of core site functions and applications. Fundamental features to the experience on Facebook are a person's Home page and Profile. The Home page includes News

Class Action Complaint

Feed, a personalized feed of his or her friends updates. The Profile displays information about the individual he or she has chosen to share, including interests, education and work background and contact information. Facebook also includes core applications – Photos, Events, Videos, Groups, and Pages – that let people connect and share in rich and engaging ways. Additionally, people can communicate with one another through Chat, personal messages, Wall posts, Pokes, or Status Updates." *Id.*

23. According to Facebook's self-published Company Timeline, http://www.facebook.com/press/info.php?timeline, the site launched in February 2004. Facebook's Timeline claims the following growth in Website users: 1 million by December 2004, 5.5 million by December 2005, 12 million by December 2006, 50 million by October 2007, 100 million by August 2008, 350 million by December 2009 and 500 million active users by July 2010.

24. Facebook has a simple and direct commercial motivation to encourage users to build a network of friends. On information and belief, Facebook's business model is akin to that of "free TV," where free content was supported by paid advertising, except that in this instance Facebook does not pay to produce the content on Facebook.com. Instead, the content is contributed by users. Facebook monetizes its viewing audience by placing paid advertisements on the pages of Facebook users. Facebook sells advertising in the forms of banners that appear on a user's page, which when clicked, forward the user to the advertiser's site.

25. Free TV proprietors earned more advertising revenue when they had more viewers, and when viewers watched TV for longer periods of time. Similarly, on information and belief, Facebook profits both from its total number of users and the relative time each user spends on Facebook. On information and belief, Facebook's business model is premised on the notion that users with more friends on Facebook.com are likely to become more engaged in, and therefore, spend more time on Facebook.com. Similarly, the Facebook business model presumes that users who

enjoy using Facebook.com to connect to friends may encourage others to become users of Facebook.com, so that they too can find and connect with friends. Accordingly, on information and belief, Facebook's revenue is enhanced by both the volume and the intensity of the traffic on its site.

26. Facebook maintains pages directed to advertisers, "Facebook Ads," in which Facebook states that it can allow advertisers to "[c]onnect with more than 500 million potential customers," "[c]hoose your audience by location, age and interest" and "[t]est simple image and text-based ads and see what works." www.facebook.com/advertising. The reference to choosing an advertiser's audience relates to the manner in which Facebook uses personal information contributed by a user, such as birthdate, sex, relationship status, likes and interests and other personal information, in a manner that can be used by advertisers to place targeted advertisements only on pages of users with a higher propensity to be interested in the product. For example, Facebook's website touts the example of a photographic company that received fantastic returns on ads placed exclusively on the Facebook pages of women from the ages of 24 to 30 whose relationship status information on the Website indicated that they were engaged. *Id.*

27. Facebook.com boasts how personal information contributed by users may be used to the commercial advantage of advertisers: "We capture [personal user] information and share it with you in aggregate so your ad can reach the right audience. **For an advertiser, profile data is a unique opportunity to reach customers like never before.** [Emphasis in original.] Ads on Facebook are seamlessly integrated into the Facebook experience. When users are browsing Facebook and interacting with their friends' profiles, looking at pictures, Groups, Events or Pages, they see ads targeted according to their demographic information, interests and connections. These ads appear in the right-hand column of each page." http://www.facebook.com/adsmarketing/index.php?sk=targeting

28. Facebook asks prospective advertisers to set parameters for how they wish to target their ads, and to bid for ad placements based either on costs per click (CPC) or cost per million impressions (CPM). http://www.facebook.com/adsmarketing/index.php?sk=cost

29. Facebook.com also references a project it refers to as a "Platform." While couched in tech-speak, Facebook's description of the Platform presages yet other ways in which Facebook seeks to monetize the personal information contributed by its users: "Facebook Platform is a development platform that enables companies and engineers to deeply integrate with the Facebook website and gain access to millions of users through the social graph. Facebook is a part of millions of people's lives all around the world providing unparalleled distribution potential for applications and the opportunity to build a business that is highly relevant to people's lives. More information can be found at <http://developers.facebook.com>." http://www.facebook.com/press/info.php?factsheet. The "Platform" appears to be a program through which Facebook charges to provide access to information about Facebook.com partners to commercial partners. For example, Facebook.com says that it has partnered with Levis to create a Levis.com "Friends Store," in which Facebook.com users can purchase products that their Facebook.com friends have purchased and liked.

30. Facebook has parlayed the exponentially growing audience of Facebook.com into astonishing growth in advertisements and corresponding revenues. Only five years after its launch in 2004, Facebook reported gross revenues of $800 million in 2009. While Facebook is not yet publicly traded, Facebook shares were reported to be traded privately at in excess of $75 per share, resulting in a reported company valuation of some $33 billion, more than eBay and Dell and twice that of Yahoo!

## Use of Name and Likeness to Endorse Friend Finder

31. Facebook has promulgated a set of lofty "Facebook Principles" on its website in order to promote an aura of outstanding citizenship, including statements that it is "building Facebook to make the world open and transparent," and that "[p]eople should have the freedom to decide with whom they will share their information, and to set privacy controls to protect those choices."

32. However, the tantalizing and direct connection between growth in numbers of users and untold wealth has caused Facebook to turn its back on these principles. Specifically, on information and belief, Facebook has made cynical and surreptitious business decisions to misappropriate its users' names and likeness to promote use of its "Friend Finder" service.

33. "Friend Finder" is the name of a service offered by Facebook. While benignly named, the service primarily features a potentially intrusive utility that, on information and belief, uploads users' entire body of email contacts to a database maintained by Facebook. The page featuring Friend Finder has a dialogue box that defaults to the user's email address and invites input of the user's email password, below which there is a hyperlink that says "Learn More." If one clicks on that link, a box pops up that says "[w]e may use the email addresses you upload through this importer to help you connect with friends, including using this information to generate Suggestions for you and your contacts on Facebook." What is not disclosed on the Friend Finder page or the pop up box, but is buried in terms that appear on other Facebook.com web pages that are not linked to the Friend Finder page, is that Facebook also reserves the right to use email contacts uploaded through the Friend Finder service to spam non-Facebook members to join Facebook.

34. On information and belief, to promote the use of its Friend Finder service, Facebook has, and continues to, post the names and likenesses of a user's friends on that user's Facebook.com page, using words to the effect that the user's

- 9 -

Class Action Complaint

1  friends "found friends using the Friend Finder," and suggesting that the user also
2  "Give it a try!" One such ad appears as follows:

Nick – try the automatic Friend Finder                         close

  Benattir, Carly and Gregory found many of their friends using the automatic Friend Finder. Give it a try ▶

8    35.    On information and belief, the persons whose names and likeness are
used to promote Friend Finder have not actually consented to use of their names and
likenesses to endorse Facebook's Friend Finder service. On information and belief,
Facebook did not disclose to such persons that Facebook intended to use his/her name
and likeness to promote the Friend Finder service to others.

13   36.    Additionally, on information and belief, the friends whose names and
likenesses are used to promote the Friend Finder service often never actually used the
contacts upload feature. A number of users have posted complaints on Facebook.com
and other pages, saying that the names, photographs and likenesses of people who
never used the service were wrongfully used to promote Friend Finder. The named
plaintiffs neither consented to use of their name, photograph or likeness in connection
with the Friend Finder service, nor did they actually use the service.

20   37.    On information and belief, the misappropriation of names, photographs
and likenesses alleged herein has a direct commercial purpose, namely, to increase
Facebook's user base, and to increase the intensity of such use, all for the purpose of
generating additional revenues.

24   38.    In each instance in which Facebook uses the name and likeness of a
Facebook.com user to promote the Friend Finder service without consent, Facebook
violates such users' statutory and common law rights of publicity, creates a false
endorsement and, in so doing, commits unfair competition, all all in an effort to
increase Facebook's already massive reach and related advertising revenue. As a

consequence of these unauthorized solicitations, Plaintiffs have suffered injury-in-fact by having their name and likeness misappropriated without their knowledge or consent as part of Facebook's Friend Finder solicitations.

### Class Averments

39. **Class Definition**. The named plaintiffs bring this action on behalf of themselves individually and on behalf of all other similarly situated (collectively "Plaintiffs") as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. The Class that the named plaintiffs seek to represent is: **All Facebook users whose names, photographs and/or likenesses have been used without consent on Facebook.com for the purpose of advertising Facebook's Friend Finder service, commencing November 22, 2006 and continuing through the date of the filing of this Class Action Complaint ("the Class Period.")**

40. Plaintiffs reserve the right to modify the definition of the Class after further discovery.

41. This class action satisfies the requirements enumerated in FRCP Rule 23. The class is so numerous that joinder of all members is impracticable. There are questions of law or fact common to the class. The claims of the representative parties are typical of the claims or defenses of the class. The representative parties will fairly and adequately protect the interests of the class.

42. **Numerosity**. The class is so numerous that joinder of all members is impracticable. Facebook claims some 500 million users. Assuming that Facebook has used the names and likeness of .1% of its users without consent – an estimate that is likely low by many orders of magnitude – there would be 500,000 plaintiffs. In all likelihood, the number of class members is in the millions.

43. **Commonality**. There are questions of law or fact common to the class. In each case, the question will be whether Facebook used the name, photograph or likeness of a user without their consent, and whether such use violated the claims asserted herein.

- 11 -

Class Action Complaint

44. Further, common issues of law and fact predominate. The common legal and factual questions, which do not vary from class member to class member, and which may be determined without reference to the individual circumstances of any class member include, but are not limited to the following:

    a. Whether Facebook utilized Plaintiffs' names and likenesses in connection with its Friend Finder solicitations;

    b. Whether Facebook informed Plaintiffs it was using their names and likenesses in this manner;

    c. Whether Facebook obtained Plaintiffs' consent for the use of their names and likenesses in connection with its Friend Finder solicitations;

    d. Whether Facebook's Friend Finder solicitations violated Plaintiffs' statutory and common law rights of publicity;

    e. Whether Facebook's Friend Finder solicitations created a false endorsement;

    f. Whether Plaintiffs are entitled to recover the greater of seven hundred fifty dollars ($750) per violation or the actual damages suffered by them as a result of the unauthorized use of their names and likenesses;

    g. Whether Plaintiffs are entitled to treble their damages arising from Facebook's alleged false endorsement;

    h. Whether Facebook's Friend Finder solicitations constitute unlawful, unfair and/or fraudulent business acts or practices in violation of California Business & Professions Code sections 17200 *et seq.*;

    i. Whether Plaintiffs and the class are entitled to recover restitution based upon Facebook's unlawful, unfair and/or fraudulent business acts or practices; and

    j. Whether Facebook should be enjoined from continuing the unlawful, unfair and/or fraudulent business acts or practices, including but not

limited to false advertising, relating to the representations made about Plaintiffs' use, endorsement or sponsorship of the Friend Finder application.

45. The issues to be jointly tried – when compared with those which may require separate adjudication – are sufficiently numerous and substantial to make the class action advantageous to the judicial process and the litigants. Because it is Facebook's alleged pattern and practice of utilizing its users' names and likenesses to advertise its Friend Finder service – without letting class members know or obtaining their consent – that is at issue, any individual issues or testimony will merely corroborate evidence gathered from Facebook in this regard. Thus, the joint issues are more numerous and substantial than the individual issues, if any, to be tried. As such, the class action format will be advantageous both to the judicial process and the litigants.

46. **Typicality**. The claims of the named plaintiffs herein are the same as those of the proposed class. Each named Plaintiff, and each class member, has claims arising from Facebook's use of their name, photograph or likeness without consent, in a fashion violative of statutory and common law rights of publicity, the Lanham Act and the California unfair competition law.

47. **Fairness of Representation**. The named plaintiffs have no interests which are adverse to, or which conflict with the interests of prospective class members, and thus the named plaintiffs are able to fairly and adequately represent and protect the interests of the defined class. The named plaintiffs have raised viable right of publicity and unfair business practice claims of the type reasonably expected to be raised by members of the class, and will vigorously pursue those claims. If necessary, the named plaintiffs may seek leave of the Court to amend this Complaint to include additional named class representatives to represent the class or additional claims as may be appropriate. The named plaintiffs are represented by experienced, qualified and competent counsel who are committed to prosecuting this action. As such, the named plaintiffs can – and will – adequately represent the class.

- 13 -

48.  **Prosecution of Separate Actions not Desirable**.  Given the relatively small $750 statutory penalty provided for violations of Civil Code Section 3344, and relative uncertainties in framing actual damages, the claims of the individual members of the class likely are not large enough to warrant bringing individual actions. Accordingly, utilization of the class action mechanism is the most economically feasible means of protecting class plaintiffs' important rights.

49.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy since individual litigation of all class members claims is impracticable. Even if every class member could afford individual litigation, the court system could not. Without the class action format, it would be unduly burdensome to the courts in which individual litigation of numerous cases would otherwise need to proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each class member. Plaintiffs anticipate no difficulty in the management of this action as a class action.

50.  Additionally, the prosecution of separate actions by individual class members may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other class members not parties to such adjudication or that would substantially impair or impede the ability of such nonparty class members to protect their interests. The prosecution of individual actions by class members could establish inconsistent results.

51.  Defendant has engaged in misappropriation of Plaintiffs' names and likenesses and unlawful, unfair and fraudulent conduct, which has affected the class, thereby making appropriate injunctive relief because the conduct described herein is

capable of repetition and will continue unless permanently restrained and enjoined by this Court.

### First Claim for Relief

### Violation of Cal. Civ. Code § 3344

52. Plaintiffs incorporate by reference in this claim for relief the averments of Paragraphs 1 through 51 above.

53. Facebook has knowingly used Plaintiffs' names, photographs and likenesses for purposes of advertising or soliciting Facebook's Friend Finder service, without Plaintiffs' prior consent.

54. As a result of its unlawful use of the names, photographs and likenesses of the Plaintiffs, Facebook is liable for any damages sustained by Plaintiffs as a result thereof, in an amount equal to the greater of seven hundred fifty dollars ($750) per violation, or the actual damages suffered by Plaintiffs as a result of the unauthorized use.

55. As a result of this conduct, Facebook is also liable for any profits from the unauthorized uses that are attributable to the use and are not taken into account in computing the actual damages.

56. On information and belief, the conduct of Facebook, as alleged herein, constitutes fraud, malice and oppression. On information and belief, Facebook engaged in such conduct with the intention of harming Plaintiffs and in conscious disregard of their rights, all so as to entitle Plaintiffs to punitive damages in an amount according to proof at trial, and as set forth in Civil Code section 3344.

57. Plaintiffs also seek attorney's fees and costs as set forth in Civil Procedure Code section 3344.

### Second Claim for Relief

### Violation of Common Law Right of Publicity

58. Plaintiffs incorporate by reference in this claim for relief the averments of Paragraphs 1 through 51 above.

- 15 -

59. Facebook has knowingly used and misappropriated Plaintiffs' names and likenesses in connection with its Friend Finder solicitations, without Plaintiffs' knowledge or consent.

60. Facebook's use and misappropriation of Plaintiffs' names and likenesses falsely suggests Plaintiffs' endorsement or sponsorship of the Friend Finder application, to Facebook's advantage, both commercial and otherwise.

61. Facebook is liable for any and all damages sustained by Plaintiffs as a result of its unauthorized use. The amount of Plaintiffs' damages is currently unknown, but will be subject to proof at the time of trial.

62. The conduct of Facebook also entitles Plaintiffs to injunctive relief to prevent any and all future misuse or misappropriation of Plaintiffs' names and likenesses, by Facebook.

63. On information and belief, the conduct of Facebook, as alleged herein, constitutes fraud, malice and oppression. On information and belief, Facebook engaged in such conduct with the intention of harming Plaintiffs and in conscious disregard of their rights, all so as to entitle Plaintiffs to punitive damages in an amount according to proof at trial.

### Third Claim for Relief
### Violation of 15 U.S.C. § 1125(a)(1)(a)

64. Plaintiffs incorporate by reference in this claim for relief the averments of Paragraphs 1 through 51 above.

65. As averred above, Facebook has, on or in connection with goods or services, used in commerce words, terms, names, symbols or devices, or combinations thereof, or false designations of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or cause mistake, or to deceive as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

- 16 -

Class Action Complaint

66. As a result of this conduct, Plaintiffs are entitled to recover Facebook's profits arising from their unlawful activity, as well as Plaintiffs' actual damages and costs.

67. The Court should, in equity and justice, treble the amount of Plaintiffs' actual damages.

68. In the alternative, the Court may in its discretion enter judgment for such sum as the Court finds just, according to the circumstances of the case.

69. Plaintiffs also pray for an award of their reasonable attorneys' fees.

### Fourth Claim for Relief

### Violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.*

70. Plaintiffs incorporate by reference in this claim for relief the averments of Paragraphs 1 through 69 above.

71. As a result of the wrongdoing averred above, Facebook has engaged in unfair competition, as that term is defined in Business and Professions Code sections 17200 *et seq*.

72. As a result of the wrongdoing averred above, Facebook has engaged in unlawful competition, as that term is defined in Business and Professions Code sections 17200 *et seq.*, including violating California Civil Code section 3344, violating Plaintiffs' common law rights of publicity and title 15 United States Code section 1125(a)(1)(A).

73. As a result of the wrongdoing averred above, Facebook has engaged in unfair competition, as that term is defined in Business and Professions Code sections 17200 *et seq*.

74. Plaintiffs are "persons" within the meaning of Section 17201 of California's Business & Professions Code.

75. Because Facebook's unlawful conduct as alleged in this Complaint threatens to continue, Plaintiffs have no plain, speedy and adequate remedy at law.

- 17 -

Class Action Complaint

Accordingly, both restitution and injunctive relief are proper and necessary pursuant to Section 17203 of California's Business & Professions Code.

76. Plaintiffs' efforts in securing the requested relief will result "in the enforcement of an important right affecting the public interest" for "(a) significant benefit, whether pecuniary or nonpecuniary, [which will be] conferred on a . . . large class of persons, (b) the necessity and financial burden of private enforcement . . . are such as to make the award [of attorneys' fees] appropriate and such fees should not in the interest of justice be paid out of the recovery, if any." Civ. Proc. Code section 1021.5. Accordingly, Plaintiffs request that the Court award attorneys' fees pursuant to Section 1021.5.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

A. Certification of this action as a class action.

B. An award of $750 for each violation of each class member's statutory right of publicity.

C. An award of actual damages to each class member, in an amount to be proven at time of trial, in no event less than $100,000,000 in total.

D. Trebling of Plaintiffs' actual damages.

E. Judgment for such sum as the Court finds just, according to the circumstances of the case.

F. An award of restitution to each class member.

G. Injunctive relief barring Facebook from continuing the unlawful activity alleged herein.

H. An award of Plaintiffs' reasonable attorneys' fees and litigation costs.

I. Such other and further relief as may be warranted by the evidence and which this Court may deem just and proper.

Dated: November 22, 2010

SPILLANE WEINGARTEN LLP
Jay M. Spillane
Alex M. Weingarten
Eric B. Carlson

INITIATIVE LEGAL GROUP APC
Marc Primo
Darrel Menthe
Gene Williams
Mark Pifko

By: _____
Jay M. Spillane
Attorneys for Plaintiffs and Class Members

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial of this action before a jury.

Dated: November 22, 2010

SPILLANE WEINGARTEN LLP
Jay M. Spillane
Alex M. Weingarten
Eric B. Carlson

INITIATIVE LEGAL GROUP APC
Marc Primo
Darrel Menthe
Gene Williams
Mark Pifko

By: _____
Jay M. Spillane
Attorneys for Plaintiffs and Class Members

- 19 -

Class Action Complaint