1  COOLEY LLP
   MICHAEL G. RHODES (116127)
2  (rhodesmg@cooley.com)
   MATTHEW D. BROWN (196972)
3  (brownmd@cooley.com)
   101 California Street, 5th Floor
4  San Francisco, CA  94111-5800
   Telephone:    (415) 693-2000
5  Facsimile:    (415) 693-2222

6  Attorneys for Defendant FACEBOOK, INC.

7

8                  UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10                   SAN FRANCISCO DIVISION

11

12  ROBYN COHEN, SHANNON            Case No. 10-cv-05282-RS
    STOLLER, CHRISTOPHER
13  MARSHALL, BRYAN SIGLOCK, and    **FACEBOOK, INC.'S MOTION TO DISMISS**
    DEBRA LEWIN, individually and on **CLASS ACTION COMPLAINT**
14  behalf of others similarly situated,
                                    **F.R.C.P. 12(b)(6)**
15                 Plaintiffs,

16            v.                    Date:       March 3, 2011
                                    Time:       1:30 p.m.
17  FACEBOOK, INC., a Delaware      Courtroom: 3
    corporation,                    Judge:      Richard Seeborg
18                                  Trial Date: None Set
                   Defendant.
19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS ................................................1

STATEMENT OF RELIEF SOUGHT ................................................1

STATEMENT OF ISSUES TO BE DECIDED ................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................2

I. INTRODUCTION ................................................2

II. STATEMENT OF FACTS ................................................3

III. APPLICABLE STANDARDS ................................................5

IV. ARGUMENT ................................................6

    A. Plaintiffs Fail to State a Claim for Common Law or Statutory Misappropriation of the Right of Publicity (First and Second Claims for Relief) ................................................6

        1. Plaintiffs consented to the use of their names and/or likenesses in association with services on Facebook ................................................7

        2. Plaintiffs fail to allege that they suffered any injury, a necessary element under both the common law and section 3344 ................................................9

        3. Plaintiffs fail to allege that Facebook used their names and/or likenesses for an "advantage" as required by both the common law and section 3344 ................................................10

    B. Plaintiffs Cannot State a Claim Under 15 U.S.C. § 1125(a)(1)(A) Since They Cannot Allege a Commercial Interest in Their Name Akin to a Trademark, or Any Injury to Such a Commercial Interest (Third Claim for Relief) ................................................12

    C. Plaintiffs Fail to State a Claim for Violation of California Business and Professions Code Section 17200 (Fourth Claim for Relief) ................................................15

V. CONCLUSION ................................................18

Cooley LLP
Attorneys At Law
San Francisco

i.

FACEBOOK'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. 10-CV-05282-RS

TABLE OF AUTHORITIES

Page(s)

CASES

*Animal Legal Defense Fund v. Mendes*,
 160 Cal. App. 4th 136 (2008) ................................................................................15

*Ashcroft v. Iqbal*,
 129 S. Ct. 1937 (2009) ..............................................................................................5

*Barrus v. Sylvania*,
 55 F.3d 468 (9th Cir. 1995) ............................................................... 12,13, 14

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ............................................................................ 5, 10, 13

*Californians for Disability Rights v. Mervyn's, LLC*,
 39 Cal. 4th 223 (2006) ............................................................................................15

*Camacho v. Auto. Club of S. Cal.*,
 142 Cal. App. 4th 1394 (2006) ..............................................................................16

*Cel-Tech Commc'ns., Inc. v. Los Angeles Cellular Tel. Co.*,
 20 Cal. 4th 163 (1999) ...........................................................................................16

*Colligan v. Activities Club of New York, Ltd.*,
 442 F.2d 686 (2d Cir. 1972) ...................................................................................14

*Condit v. Star Editorial, Inc.*,
 259 F. Supp. 2d 1046 (E.D. Cal. 2003) ................................................. 12,13, 14

*Craigslist, Inc. v. Naturemarket, Inc.*,
 694 F. Supp. 2d 1039 (N.D. Cal. 2010)..................................................................7

*Cromer v. Lounsbury Chiropractic Offices, Inc.*,
 866 F. Supp. 960 (S.D. W. Va. 1994) ...................................................................15

*Davis v. Ford Motor Credit Co.*,
 179 Cal. App. 4th 581 (2009) ................................................................................16

*Drum v. San Fernando Valley Bar Ass'n*,
 182 Cal. App. 4th 247 (2010) ................................................................................17

*Engalla v. Permanente Med. Group, Inc.*,
 15 Cal. 4th 951 (1997)............................................................................................17

*Facebook, Inc. v. Power Ventures, Inc.*,
 No. C 08-05780 JW, 2010 WL 3291750 (N.D. Cal. July 20, 2010).....................7

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii.

FACEBOOK'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. 10-CV-05282-RS

*Freeman v. Time, Inc.*,
    68 F.3d 285 (9th Cir. 1995) ................................................................................................18

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) .............................................................................................17

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003).......................................................................................................18

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) .............................................................................................................16

*Mortensen v. Bresnan Commc'n, LLC*,
    No. CV 10-13-BLG-RFC, 2010 WL 5140454 (D. Mont. Dec. 13, 2010) ............................9

*Navarro v. Block*,
    250 F.3d 729 (9th Cir. 2001) .................................................................................................5

*Newcombe v. Adolf Coors Co.*,
    157 F.3d 686 (9th Cir. 1998) ....................................................................................6, 10, 11

*Ott v. Ingenix, Inc.*,
    333 F. Appx. 342 (9th Cir. 2009).................................................................................13, 14

*Pesina v. Midway Mfg. Co.*,
    948 F. Supp. 40 (N.D. Ill. 1996) .........................................................................................15

*Slivinsky v. Watkins-Johnson Co.*,
    221 Cal. App. 3d 799 (1990) ...........................................................................................9, 10

*Smith v. Montoro*,
    648 F.2d 602 (9th Cir. 1981) ...............................................................................................13

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ............................................................................................5, 7

*Troyk v. Farmers Group, Inc.*,
    171 Cal. App. 4th 1305 (2009) ............................................................................................15

*Van Ness v. Blue Cross of Cal.*,
    87 Cal. App. 4th 364 (2001) ................................................................................................18

*Waits v. Frito-Lay, Inc.*,
    978 F.2d 1093 (9th Cir. 1992) .......................................................................................12, 13

*White v. Samsung Electronics America, Inc.*,
    971 F.2d 1395 (9th Cir. 1992) .............................................................................................13

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii.

FACEBOOK'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. 10-CV-05282-RS

*Whiteside v. Tenet Healthcare Corp.*,
101 Cal. App. 4th 693 (2001) ..................................................................16

*William H. Morris v. Group W, Inc.*,
66 F.3d 255 (9th Cir. 1995) ....................................................................12

**STATUTES**

15 U.S.C.
§ 45(n) .....................................................................................................16
§ 1125(a)(1) ......................................................................................passim
§ 1125(a)(1)(A) ................................................................................12, 14
§ 1127 ...............................................................................................13, 14

California Business and Professions Code
§ 17200 ............................................................................................passim
§ 17204 ....................................................................................................15

California Civil Code
§ 3344 ..............................................................................................passim

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure
9(b) ..........................................................................................................17
12(b)(6) ..................................................................................1, 5, 7, 13

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FACEBOOK'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. 10-CV-05282-RS

**NOTICE OF MOTION AND MOTION TO DISMISS**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 3, 2011 at 1:30 p.m. or as soon thereafter as this motion may be heard in the above-entitled court, located at 450 Golden Gate Avenue, San Francisco, California, in Courtroom 3 (17th Floor), Defendant Facebook, Inc. ("Facebook") will move to dismiss the Class Action Complaint (the "Complaint") filed by Plaintiffs.  Facebook's Motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6) and is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Request for Judicial Notice, the Declaration of Ana Yang and accompanying Exhibits filed herewith, and all pleadings and papers on file in this matter, and upon such other matters as may be presented to the Court at the time of the hearing or otherwise.

**STATEMENT OF RELIEF SOUGHT**

Facebook seeks an order, pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissing Plaintiffs' Complaint and each of the four Claims for Relief alleged therein for failure to state a claim upon which relief can be granted.

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Because the Complaint fails to state a claim upon which relief can be granted under the California statute on misappropriation of the right of publicity, Civil Code section 3344, should the First Claim for Relief be dismissed?

2.      Because the Complaint fails to state a claim upon which relief can be granted under California common law on misappropriation of the right of publicity, should the Second Claim for Relief be dismissed?

3.      Because the Complaint fails to state a claim upon which relief can be granted under 15 U.S.C. § 1125(a)(1), should the Third Claim for Relief be dismissed?

4.      Because the Complaint fails to state a claim upon which relief can be granted under California Business and Professions Code section 17200, should the Fourth Claim for Relief be dismissed?

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1.

FACEBOOK'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. 10-CV-05282-RS

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Facebook is a social network that enables users to connect and share content with their family and friends.  On Facebook's website, each Facebook user ("User") creates a personal network of Facebook "friends" and also creates a profile page on which to post information that the User wants to share, and on which the User's friends can also post greetings and other information.  To create a profile, a User need only submit his or her name, age, gender, and a valid email address; the User may also, but is not required to, upload a "profile picture."  Facebook enables Users to share information and comments about virtually anything—such as vacation photos, news about their day, or opinions about world events.  Users can connect with friends down the street or continents away.  Users can also use Facebook to re-connect with old friends who they have lost touch with—a college roommate or a distant cousin.  Building a network of friends and maintaining those connections is one of the most fundamental purposes behind Facebook.  Facebook is, and has always been, a free service.

Each of the named Plaintiffs is alleged to be a Facebook User.  Their allegations pertain to the "Friend Finder" service on the Facebook website, which helps Users find their friends so they can connect with them.  The Complaint alleges that Facebook published Plaintiffs' names and/or likenesses in connection with the "Friend Finder" service, thereby violating Plaintiffs' common law and statutory publicity rights (California Civil Code section 3344), Lanham Act section 1125(a)(1) (preventing false associations with goods or services), and California Business and Professions Code section 17200.  Plaintiffs allege that Facebook uses "Friend Finder" to encourage Users to build a larger network of friends, which increases Facebook's User population, thereby enabling Facebook to demand a higher price for advertising on the website.

Plaintiffs' four claims fail as a matter of law.  First, Plaintiffs' common law and statutory misappropriation claims fail because Plaintiffs consented to the use of their names and/or likenesses in association with Facebook services by registering for and using Facebook.  Indeed, the very contractual terms and Facebook principles and policies to which Plaintiffs refer in the Complaint give Facebook permission to use their names and likenesses in the manner alleged.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2.

FACEBOOK'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. 10-CV-05282-RS

1   Further, Plaintiffs have not alleged any injury, nor have they alleged that Facebook used their

2   names and/or likenesses for its "advantage" in the manner required by law.  Second, Plaintiffs do

3   not have standing to bring a false association claim under the Lanham Act since they have not and

4   cannot allege a "commercial interest" in their names and/or likenesses that Facebook's alleged

5   use could have injured, nor have they alleged any actual injury to such a commercial interest.

6   Third, Plaintiffs do not and cannot allege they suffered "injury in fact" and "lost money or

7   property" as a result of unfair competition, and, as such, they lack standing to bring a claim under

8   Business and Professions Code section 17200.  Moreover, the Complaint fails to allege facts that

9   would support such a cause of action under the "unlawful," "unfair," or "fraudulent" prongs of

10  section 17200.  Accordingly, the Complaint should be dismissed for failure to state a claim.

11  ## II.   STATEMENT OF FACTS[1]

12       Facebook operates one of the most popular social networking sites in the world.  (Compl.

13  ¶ 6.)  On Facebook's website, anyone with access to a computer and an Internet connection can

14  become a Facebook user and create a personal profile page.  (*Id.* ¶¶ 6, 21, 22.)  The profile page

15  must include a name, and may, but need not, include a "profile picture" chosen and uploaded by

16  the User.[2]  On Users' profile pages, Users can post any information or content they wish,

17  including their interests, education, or updates about what they are doing that day (*i.e.*, "status

18  updates").  (*Id.* ¶ 22.)  Users may also communicate and connect with their friends.  (*Id.* ¶ 21.)  To

19  do so, one User must send a request to another Facebook User with whom he wishes to connect,

20  asking the other User to accept him as a "friend."  Once friends, they can both see items on each

21  other's profile pages.  (*Id.*)   For example, friends can see each other's photos, videos, groups on

22  Facebook to which they belong, or anything else the User chooses to share.  (*Id.* ¶ 22.)  Users can

23

24  _____

25  [1] This Statement of Facts is based on the allegations in the Complaint, which Facebook assumes as true for purposes of this motion but which Facebook does not thereby admit.

26  [2] Users can and do use a range of photos for their profile pictures, including pets, cars, nature scenes, etc.  The Complaint does not allege that the named Plaintiffs uploaded a profile picture

27  that was an actual "likeness" of themselves.  The Complaint does not provide information

28  sufficient to confirm Plaintiffs are Facebook users or to locate their profile pages.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO
3.
FACEBOOK'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. 10-CV-05282-RS

also communicate on Facebook through various messaging features, including chat, personal messaging, wall posts, and status updates. (*Id.*)

Facebook is, and has always been, a free service. Facebook earns revenue by selling space on the website for advertisements that appear on the right side of the page a User may be viewing. (*Id.* ¶¶ 7, 24, 27.) Advertisers can target their advertisements to Facebook Users based on various anonymous demographic criteria (*e.g.*, age, gender, home state, interests). (*Id.* ¶ 26.) To obtain this space, advertisers place bids. (*Id.* ¶ 28.)

The "Friend Finder" lets a User search through the User's email contacts to identify people the User may know who are also Facebook Users. (Compl. ¶ 33.) If there is a match, the "Friend Finder" will alert the User, who may then request that the parties become friends. (*Id.* ¶ 10.) To utilize the service, the User opens the "Friend Finder" application, which contains the User's e-mail address, and also provides his or her e-mail password, permitting Facebook to search the e-mail contacts within that e-mail account. (*Id.* ¶ 33.) When a User chooses to use "Friend Finder," Facebook informs the User that "[w]e may use the email addresses you upload through this importer to help you connect with friends, including using this information to generate Suggestions for you and your contacts on Facebook." (*Id.*) Plaintiffs allege that Facebook employs "Friend Finder" to increase Facebook's user population in order to increase the revenue it can earn by selling advertising space. (*Id.* ¶¶ 25, 37.)

Plaintiffs complain that Facebook promotes the "Friend Finder" service by posting the names and/or likenesses of friends on the User's profile page. (*Id.* ¶ 34.) They allege that along with this posting, Facebook includes words to the effect that the User's friends "'found friends using the Friend Finder,' and suggesting that the User also 'Give it a try!'" (*Id.*) Plaintiffs allege that Facebook used their names and/or likenesses, allegedly without their consent, in such postings and that this use constitutes misappropriation of the right of publicity, a violation of the

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4.

FACEBOOK'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. 10-CV-05282-RS

1  Lanham Act, and a violation of California Business and Professions Code § 17200.[3]  (*Id.*)

2  Plaintiffs allege, without elaboration or specificity, that these actions caused them to suffer

3  "injury-in-fact."  (*Id.* ¶ 38.)

4  **III.   APPLICABLE STANDARDS**

5        A court may dismiss a claim under Rule 12(b)(6) when "there is no cognizable legal

6  theory or an absence of sufficient facts alleged to support a cognizable legal theory."  *Navarro v.*

7  *Block*, 250 F.3d 729, 732 (9th Cir. 2001).  In deciding a motion under Rule 12(b)(6), "all material

8  allegations of the complaint are accepted as true, as well as all reasonable inferences to be drawn

9  from them."  *Id.*  However, as the Supreme Court recently emphasized, "labels and conclusions,

10  and a formulaic recitation of the elements of a cause of action will not" survive a motion to

11  dismiss.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "[A] complaint must contain

12  sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'

13  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

14  draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v.*

15  *Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).  A plaintiff must

16  therefore plead "more than a sheer possibility that a defendant has acted unlawfully."  *Id.* at 1949.

17  A complaint must "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 545.

18        Additionally, "in order to '[p]revent[] plaintiffs from surviving a Rule 12(b)(6) motion by

19  deliberately omitting . . . documents upon which their claims are based,' a court may consider a

20  writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on

21  the document and its authenticity is unquestioned."  *See Swartz v. KPMG LLP*, 476 F.3d 756, 763

22  (9th Cir. 2007).  As discussed in greater detail in the accompanying Request for Judicial Notice

23  filed herewith, the Complaint references and relies on the Facebook Principles, Statement of

24

25  [3] Plaintiffs also allege in passing, on information and belief, that Facebook sometimes uses Users'

26  e-mail contacts to solicit persons who are not yet Facebook Users to join.  There is no suggestion
that this was allegedly the case for any of the named Plaintiffs.  (*Id.* ¶¶ 10, 33.)  In any event, the
Complaint admits that the terms on Facebook's website inform Users that Facebook reserves the

27  right to use email contacts uploaded through the Friend Finder service to ask people to join

28  Facebook.  (*Id.* ¶ 33.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5.

FACEBOOK'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. 10-CV-05282-RS

1    Rights and Responsibilities, and Privacy Policy (*see* Compl. ¶¶ 9, 31, 33), which, under the

2    applicable legal principles, the Court may properly consider in ruling on this motion.[4]

3    **IV.    ARGUMENT**

4            Plaintiffs allege that Facebook violated their common law and statutory (California Civil

5    Code section 3344) publicity rights, Lanham Act section 1125(a)(1) (preventing false associations

6    with goods or services), and California Business and Professions Code section 17200 when it

7    allegedly published their names and/or likenesses in association with the "Friend Finder" service.

8    As discussed below, for each of these four Claims for Relief, Plaintiffs fail to state a claim and,

9    accordingly, the Complaint should be dismissed.

10           **A.    Plaintiffs Fail to State a Claim for Common Law or Statutory**
             **Misappropriation of the Right of Publicity (First and Second Claims for**
11           **Relief).**

12           To state a claim for common law misappropriation, Plaintiffs must allege "(1) the

13   defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to

14   defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury."

15   *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 692 (9th Cir. 1998).  In addition to these elements,

16   to state a claim for statutory misappropriation under California Civil Code section 3344, Plaintiffs

17   must also allege "(1) a 'knowing' use; (2) for purposes of advertising, and (3) a direct connection

18   between the use and the commercial purpose."  *Id.*  Plaintiffs fail to state a claim for either a

19   common law or statutory violation because (i) Plaintiffs consented to Facebook's use of their

20   name and/or likeness in connection with Facebook services; (ii) Plaintiffs have not alleged any

21   injury, a necessary element of both claims; and (iii) Plaintiffs fail to allege that Facebook used

22   their names and/or likenesses for its "advantage" as interpreted by the Ninth Circuit.  Therefore,

23   Plaintiffs' First and Second Claims for Relief should be dismissed.

---

[4] What the Complaint refers to as Facebook's "terms" (Compl. ¶ 33), Facebook formally refers to
as the "Statement of Rights and Responsibilities."  The SRR can be found by clicking on a link
titled "Terms" at the bottom of the Facebook webpage.  (*See* Declaration of Ana Yang ("Yang
Decl."), filed herewith, ¶ 2, Ex. A.)  The SRR, Principles, and Privacy Policy are attached as
Exhibits A to C to the Yang Declaration.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO                                  6.

FACEBOOK'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. 10-CV-05282-RS

1    **1.      Plaintiffs consented to the use of their names and/or likenesses in association with services on Facebook.**

2

3        Plaintiffs allege that they never "consented to the use of their name[s], photograph[s] or

4    likeness[es]" in connection with the "Friend Finder" service.   This assertion, however, is

5    contradicted by the very contractual terms and Facebook principles and policies to which

6    Plaintiffs refer in the Complaint.   These terms give Facebook the permission to use Plaintiffs'

7    names and/or likenesses in exactly the manner Plaintiffs allege.   As referenced by the Complaint,

8    all Facebook Users are bound by Facebook's "terms" which the company formally calls its

9    "Statement of Rights and Responsibilities" ("SRR").   (Compl. ¶ 33.)   Facebook also has a

10   "Privacy Policy" which describes Users' privacy controls and which Users are encouraged to read

11   and understand.  (*Id.* ¶ 31.)[5]

12       The first statement within the SRR informs Users that it "governs [Facebook's]

13   relationship with users and others who interact with Facebook. By using or accessing Facebook,

14   you agree to this Statement."  (Yang Decl. Ex. A.)  As recently acknowledged in an unpublished

15   opinion in this Court, when a party "accesses or uses" Facebook's website, these terms are

16   binding.  *See Facebook, Inc. v. Power Ventures, Inc.*, No. C 08-05780 JW, 2010 WL 3291750, at

17   *7 n.20 (N.D. Cal. July 20, 2010) (stating that "in the act of accessing or using the Facebook

18   website alone, [defendant] Power acceded to the Terms of Use and became bound by them"); *see

19   also Craigslist, Inc. v. Naturemarket, Inc.* 694 F. Supp. 2d 1039, 1052 (N.D. Cal. 2010) (holding

20   that party consented to forum selection clause in website's terms of service where terms were

21   condition to accessing website).  Plaintiffs allege that they are Facebook Users (Compl. ¶¶ 14-18)

22   and thus they are bound by the SRR.

23

24

---

25   [5] The Complaint also refers to the "Facebook Principles" (Compl. ¶¶ 9, 31), which themselves
26   refer to the rights and responsibilities embodied by the SRR and the privacy controls described by
     the Privacy Policy.  (Yang Decl. Ex. B).  As discussed in the Request for Judicial Notice filed
27   herewith, the Court may and should take judicial notice of these three documents "in order to
     '[p]revent[] plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting . . .
28   documents upon which their claims are based.'"  *See Swartz*, 476 F.3d at 763.

Cooley LLP
Attorneys At Law
San Francisco

7.

FACEBOOK'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. 10-CV-05282-RS

1    Though Plaintiffs allege use of their names and/or likenesses was without consent, the

2    SRR contains terms which expressly permit Facebook to use a User's name and/or likeness in the

3    manner alleged.  First, the section titled "Sharing Your Content and Information" states: "For

4    content that is covered by intellectual property rights, like photos and videos ('IP content'), you

5    specifically give us the following permission, subject to your privacy and application settings:

6    you grant us a non-exclusive, transferable, sub-licensable, royalty-free, worldwide license to use

7    any IP content that you post on or in connection with Facebook ('IP License')."  (Yang Decl.

8    Ex. A, § 2.)  This contractual term unambiguously gives Facebook the right to use any photos,

9    including Plaintiffs' profile photos, in any manner on Facebook, subject to Users' privacy and

10   application settings.

11       Furthermore, the terms of the Facebook SRR and Privacy Policy inform Users that, unlike

12   other content they post on Facebook, they cannot limit the use of their names and/or profile

13   photos in association with general services provided by Facebook.[6]  This is because Facebook is a

14   social networking service, the very purpose of which is to enable people to connect with one

15   another.  The SRR refers Users to the Privacy Policy and informs them that it contains "important

16   disclosures about how you can use Facebook to share with others and *how we collect and can use*

17   *your content and information*.  We encourage you to read the Privacy Policy, and to use it to help

18   make informed decisions."  (Yang Decl. Ex. A, § 1) (emphasis added).)  The Privacy Policy

19   specifically informs users that "Facebook is designed to make it easy for you to find and connect

20   with others.  For this reason, your name and profile picture do not have privacy settings.  If you

21   are uncomfortable with sharing your profile picture, you should delete it (or not add one).  You

22   can also control who can find you when searching on Facebook or on public search engines using

23   the Applications and Websites privacy setting."  (*Id.* Ex. C, § 3.)  Users are also informed, in the

24   section titled "How We Use Your Information.  We use the information we collect to provide our

25   services and features to you . . . ."  (*Id.* Ex. C, § 5.)  As acknowledged by the Complaint, "Friend

26   _____

27   [6] Users may opt out of having their names and/or profile photos associated with certain services
related to advertisements of third-party goods and services on Facebook.  (Yang Decl. Ex. C,
28   § 5.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8.

FACEBOOK'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. 10-CV-05282-RS

1   Finder" is a "service offered by Facebook" (Compl. ¶ 33) which assists in the fundamental

2   purpose of the website: to enable Users to find and connect with friends.

3       As evident from the above terms, both the SRR and the Privacy Policy inform Users that

4   Facebook will use their names and/or likenesses in connection with the services Facebook

5   provides, including "Friend Finder," and use of the Facebook website constitutes consent to such

6   uses.  *See Mortensen v. Bresnan Commc'n, LLC*, No. CV 10-13-BLG-RFC, 2010 WL 5140454,

7   at *5 (D. Mont. Dec. 13, 2010) (dismissing claims where online subscriber agreement and privacy

8   policy both disclosed the manner in which user's information would be utilized to provide content

9   or services on the website.)  Because Plaintiffs' assertion they did not consent is contradicted by

10  the very terms the Complaint relies on, they have not and cannot state a claim under either the

11  common law or statutory right of publicity and these claims should be dismissed.[7]

12          **2.      Plaintiffs fail to allege that they suffered any injury, a necessary
                     element under both the common law and section 3344.**
13

14      Even if Plaintiffs had not consented to the use of their names and/or likenesses in

15  association with the "Friend Finder" service, their misappropriation claims fail to allege the injury

16  necessary to state a claim.   Under both the common law and section 3344, Plaintiffs must

17  adequately allege injury, which is a *necessary* element of both causes of action.  *See Slivinsky v.*

18  *Watkins-Johnson Co.*, 221 Cal. App. 3d 799, 807 (1990) (dismissing plaintiffs' common law and

19  statutory misappropriation claims because she failed to allege defendants' use of her name caused

20

21  [7] To the extent Plaintiffs suggest that the alleged use of Users' names and/or likenesses to
    "promote" the "Friend Finder" service (Compl. ¶¶ 34, 36, 53) constitutes "advertising," Facebook
22  disputes that characterization.   Even so, Plaintiffs' claims still fail because Plaintiffs gave
    Facebook permission to use their names and likenesses in connection with advertising.  The SRR,
23  in the section titled "About Advertisements and Other Commercial Content Served or Enhanced
    by Facebook," states "You can use your privacy settings to limit how your name and profile
24  picture may be associated with commercial, sponsored, or related content (such as a brand you
    like) served or enhanced by us.  *You give us permission to use your name and profile picture in*
25  *connection with that content*, subject to the limits you place."  (Yang Decl. Ex. A, § 10)
    (emphasis added).   Even if the statements alleged by Plaintiffs constituted "advertisements,"
26  Plaintiffs expressly gave Facebook permission to use their name and/or likeness in connection
    with such advertising content by utilizing the website.  Therefore, the first two claims for relief
27  should be dismissed.

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9.

FACEBOOK'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. 10-CV-05282-RS

her any injury).  The Complaint makes only one conclusory allegation regarding Plaintiffs' injuries, stating merely that Plaintiffs suffered "injury-in-fact"—a legal conclusion, not a description of Plaintiffs' actual injury.  (Compl. ¶ 38.)  A motion to dismiss does not assume the truth of conclusions of fact or law.  *See Twombly*, 550 U.S. at 555.  Instead, the Complaint must make factual allegations of injuries that would support such a legal finding.

The Complaint alleges no facts that would support a finding of injury.  At most, the Complaint alleges that Plaintiffs' names and/or likenesses were shown on the Facebook profile pages of people who were already in their existing e-mail contacts, persons that they were acquainted with outside of Facebook and had connected with as friends on Facebook.  It is hard to see how displaying Plaintiffs' names and/or likenesses in association with a service offered by Facebook, to persons who are Plaintiffs' existing Facebook friends, could cause any injury sufficient to sustain a claim for misappropriation, but in any event Plaintiffs do not even try. Failure to allege injury is fatal to both common law and section 3344 misappropriation claims.  In fact, "[r]esulting injury is the sine qua non of a cause of action for misappropriation of name." *Slivinsky*, 221 Cal. App. 3d at 807.  As Plaintiffs fail to allege any injury at all, both of their misappropriation claims should be dismissed.

### 3.   Plaintiffs fail to allege that Facebook used their names and/or likenesses for an "advantage" as required by both the common law and section 3344.

Both the common law and section 3344 distinguish between the use of a name or likeness for a party's own benefit, which may be actionable, and an incidental use of that name or likeness, which is not.  Plaintiffs do not state a claim, therefore, unless they allege the former— *i.e.*, facts demonstrating that Facebook uses their names and likenesses for its "advantage, commercially or otherwise."  *See Newcombe*, 157 F.3d at 692; Cal. Civ. Code § 3344(a).  The Ninth Circuit has defined this element as it relates to those who publish advertisements.  In *Newcombe*, the court considered a misappropriation claim against Time Magazine and the Coors Brewing Co., arising from an advertisement that used the image of a famous baseball player in a Coors advertisement without his consent.  *Id.* at 693.  In analyzing the claim, the court held that because the image was part of the beer advertisement, plaintiff had adequately demonstrated the

Cooley LLP
Attorneys At Law
San Francisco

10.

FACEBOOK'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. 10-CV-05282-RS

1   use was for the advantage of Coors (*i.e.*, to sell more beer).  It held, however, that use of the

2   likeness "could not be said to have directly benefited Time" because "the benefit [Time]

3   received—payment for the advertising space—was unrelated to the contents of the

4   advertisement." *Id.*  In short, Time Magazine received the same benefit (payment for advertising

5   space) regardless of the ad's content or efficacy.

6        Like Time Magazine, Facebook is not an advertiser, nor does it earn revenues from the

7   sale of the advertised product.  Rather, third parties use Facebook to display their advertisements

8   and Facebook earns revenue by selling advertising space.  (Compl. ¶ 21.)  As the Ninth Circuit

9   held in *Newcombe*, this sort of second-degree financial benefit is not the type of "advantage,"

10  "commercial or otherwise," that is actionable under the common law or section 3344.  *See*

11  *Newcombe*, 157 F.3d at 692.

12        Nor does the Complaint adequately allege that the association of Users' names or

13  likenesses with the "Friend Finder" service, allegedly to increase its user base, is for Facebook's

14  "advantage."  The Complaint does not allege that a User's name or likeness is associated with any

15  product or that Facebook receives direct revenue from the use of the name and/or likeness in

16  association with "Friend Finder."  Instead, it acknowledges that Facebook earns revenue by

17  selling space on its website to third-party advertisers. (Compl. ¶ 25.)  It analogizes Facebook to

18  "Free TV" wherein a television station makes its profits from advertisements and also tries to

19  increase its viewer population.  (*Id.*)  As evident from the *Newcombe* decision, however, the sale

20  of advertising space is not an "advantage" as contemplated by California misappropriation law.

21  For instance, under Plaintiffs' theory, a television station would be liable for misappropriation

22  any time it ran a spot encouraging viewers to tune to and watch an episode of a popular TV

23  program that included snippets of the program and likenesses of the actors.  Undoubtedly, the

24  television station is running the ad to encourage a larger viewership by which it may be able to

25  increase the amount it can charge for advertising.  Under Plaintiffs' theory of misappropriation

26  law, this would be enough of an "advantage" to permit suit, presumably by every actor on the

27  program.  As *Newcombe* makes clear, this is not the law.  Attenuated benefits like increased

28  advertising that are several degrees of separation away from the use of the name and likeness

11.

1    itself are not an "advantage" under California law.   For this reason as well, Plaintiffs'

2    misappropriation claims should be dismissed.

3    **B.      Plaintiffs Cannot State a Claim Under 15 U.S.C. § 1125(a)(1)(A) Since They
            Cannot Allege a Commercial Interest in Their Name Akin to a Trademark, or
4            Any Injury to Such a Commercial Interest (Third Claim for Relief).**

5            Under established Ninth Circuit precedent, Plaintiffs cannot bring a claim under the

6    Lanham Act on the facts alleged because Plaintiffs have not and cannot allege any "commercial

7    interest" in the use of their names and or likenesses that has been injured by Facebook's actions.

8    Without such a commercial interest and injury to that interest, Plaintiffs do not have standing

9    under § 1125(a)(1)(A), a statute whose purpose is to protect persons and activities engaged in

10   commerce.

11           Section 1125(a)(1), has two distinct prongs prohibiting false advertising and false

12   representations.  Under either prong, to state a prima facie claim, Plaintiffs must allege "(1) false

13   or deceptive advertisements and representations to customers; (2) which advertisements and

14   representations actually deceive a significant portion of the consuming public; and (3) injury

15   caused by such conduct."  *See William H. Morris v. Group W, Inc.*, 66 F.3d 255, 257 (9th Cir.

16   1995).  Plaintiffs claim violation of subsection (A)[8]—often referred to as a "false association"

17   claim—asserting that the alleged use of their name and/or likeness in association with the "Friend

18   Finder" service constituted a "false endorsement."  (Compl. ¶ 38.)

19           In order to sustain such a claim, Plaintiffs must allege some present "commercial interest"

20   that was injured by Defendant's actions.  *See Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1110 (9th

21   Cir. 1992); *Barrus v. Sylvania*, 55 F.3d 468, 469 (9th Cir. 1995); *Condit v. Star Editorial, Inc.*,

22   259 F. Supp. 2d 1046, 1054 (E.D. Cal. 2003) (citing Ninth Circuit precedent requiring as a

23   "prerequisite" to a false association claim that the "identity have commercial value at the time of

---

24   [8] "(1) Any person who, on or in connection with any goods or services, or any container for
     goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof,
25   or any false designation of origin, false or misleading description of fact, or false or misleading
     representation of fact, which – (A) is likely to cause confusion, or to cause mistake, or to deceive
26   as to the affiliation, connection, or association of such person with another person, or as to the
     origin, sponsorship, or approval of his or her goods, services, or commercial activities by another
27   person." 15 U.S.C. § 1125(a)(1)(A).

28

1   the disputed publication"). Otherwise, a dismissal of the claim for lack of standing under Federal

2   Rule of Civil Procedure 12(b)(6) is proper. *Id.* at 470. This requirement is consistent with the

3   intent expressed within the Lanham Act itself, "to regulate commerce within the control of

4   Congress by making actionable the deceptive and misleading use of marks in such commerce . . .

5   to protect persons engaged in such commerce against unfair competition." 15 U.S.C. § 1127; *see*

6   *also Waits*, 978 F.2d at 1108 (noting the "express purpose of the Lanham Act is the protect

7   commercial parties"). A party without any commercial interest cannot allege an interest protected

8   by the Lanham Act.[9] *See Waits*, 978 F.2d at 1108.

9       Plaintiffs do not have standing to bring a claim under § 1125(a)(1) because they have

10   failed to allege a present commercial interest that Defendants allegedly injured. The Complaint

11   contains no allegation that the named Plaintiffs' identities have commercial value. Further, aside

12   from a recitation of the legal conclusion that Facebook's acts caused Plaintiffs "injury-in-fact"

13   (Compl. ¶ 38), the Complaint is devoid of any allegation of injury. It is well established that such

14   a "formulaic recitation" of a legal conclusion without supporting factual allegations will not

15   survive a motion to dismiss. *Twombly*, 550 U.S. at 555.

16       In fact, case law establishes that Plaintiffs, as private persons and consumers, *cannot*

17   allege an injury to any commercial interest. In interpreting whether a plaintiff has a commercial

18   interest sufficient to confer standing under §1125(a)(1), the Ninth Circuit first considers whether

19   the plaintiff's identity is "akin to . . . that of a trademark holder." *See Waits*, 978 F.2d at 1110;

20   *Barrus,* 55 F.3d at 469; *Ott v. Ingenix, Inc.*, 333 F. Appx. 342, 343 (9th Cir. 2009); *see also White*

21   *v. Samsung Electronics America, Inc.*, 971 F.2d 1395, 1400 (9th Cir. 1992) (holding that

22   "trademark" in § 1125(a) claims means a celebrity's "persona," which is only actionable if the

23   persona is strong enough to rise to a level of recognition in society that would cause confusion as

24

---

25   [9]  The commercial interest must be present at the time of the publication. *See Smith v. Montoro*,
648 F.2d 602, 608 (9th Cir. 1981); *see also Condit*, 259 F. Supp. 2d at 1051-52 (discussing
26   authority requiring plaintiffs to at least "allege an existing intent to commercialize an interest in
identity" to have standing under the Lanham Act). This "present interest" requirement adheres to
27   trademark law's historic origins, requiring "that a mark must be in commercial use before the
trademark can be registered." *Condit*, 259 F. Supp. 2d at 1052.

28

Cooley LLP
Attorneys At Law
San Francisco

13.

Facebook's Motion to Dismiss
Class Action Complaint
Case No. 10-cv-05282-RS

1   to whether they were endorsing the product); *Condit*, 259 F. Supp. 2d at 1054 (dismissing

2   plaintiff's false association claim because she had not alleged her "persona has commercial

3   value" akin to a trademark or that she intended to use her identity to create such value).  The term

4   "trademark" is defined by the statute as "any word, name, symbol, or device . . . which a person

5   has a bona fide intention to use in commerce."  15 U.S.C. § 1127.

6        In analyzing whether a name or likeness has a commercial interest "akin" to a trademark,

7   the Ninth Circuit and its lower courts have held that consumers and private persons not engaged

8   in commerce of their identity do not meet this definition.  For instance in *Barrus v. Sylvania*, the

9   Ninth Circuit considered a complaint brought by consumers who alleged that statements by a

10  light bulb manufacturer were false and misleading under subsection (B).  *Barrus*, 55 F.2d at 469.

11  After carefully reviewing § 1125(a)(1) standing under Ninth Circuit precedent, the court

12  concluded that "[a]s consumers, they have alleged neither commercial injury nor competitive

13  injury" and therefore lacked standing.  Additionally, in *Ott v. Ingenix, Inc.*, the Ninth Circuit

14  considered whether a former employee could allege a § 1125(a)(1)(A) claim for his ex-company's

15  false representation that he would serve as a consultant on a project.  *Ott*, 333 Fed. Appx. at 343.

16  The court held that the use of a name or professional identity without allegations that they

17  constitute "a 'trademark' or the 'equivalent of a trademark (either through secondary meaning or

18  otherwise)'" did not demonstrate the requisite commercial injury.  *Id.*

19       Similarly, the Eastern District of California considered a false association claim brought

20  by the wife of a United States Congressman.  *See Condit*, 259 F. Supp. 2d at 1048. Plaintiff

21  alleged that a false news story attributed to her constituted a false association claim under

22  § 1125(a)(1)(A) of the Lanham Act.  *Id.* at 1050.  The court concluded that as a  private person

23  not normally engaged in the commerce of her identity, without factual allegations that plaintiff

24  had some present intent to use her identity "akin to a trademark," she failed to state a claim.  *Id.* at

25  1054.  In so holding, the court cited to a number of other circuits which require a "commercial

26  interest" that is not met by a private citizen who is not engaged in commerce of their identity.  *Id.*

27  at 1051 ("[c]ase law has not recognized the extension of [§ 1125(a)(1)] claims to protect

28  individual non-commercial image or identity") (citing *Colligan v. Activities Club of New York*,

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14.

FACEBOOK'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. 10-CV-05282-RS

1  *Ltd.*, 442 F.2d 686, 692 (2d Cir. 1972) (holding § 1125(a)(1) claims are limited to commercial

2  parties); *Pesina v. Midway Mfg. Co.* 948 F. Supp. 40, 43 (N.D. Ill. 1996) (holding plaintiff must

3  "demonstrate that [s]he was a 'celebrity' when defendants used [her] persona, name and likeness;

4  otherwise, [her] identity does not constitute an economic interest protectable under the Lanham

5  Act."); *Cromer v. Lounsbury Chiropractic Offices, Inc.* 866 F. Supp. 960, 963-64 (S.D. W. Va.

6  1994) (noting "for this court to hold that such [personal] interests are also embraced by the

7  Lanham Act would be to expand the scope of that Act beyond anything its drafters intended")).

8        Here, the Complaint contains absolutely no allegation of any commercial interest

9  Plaintiffs have in their names and/or likenesses, much less any allegation that they have used or

10  may be able to use their identities in a manner akin to a trademark.  The Complaint likewise

11  contains no factual allegations regarding any injury to such an interest.  Plaintiffs thus do not have

12  standing to bring a claim under §1125(a)(1) of the Lanham Act and their Third Claim for Relief

13  should be dismissed.

14        **C.    Plaintiffs Fail to State a Claim for Violation of California Business and
        Professions Code Section 17200 (Fourth Claim for Relief).**

15

16        For several reasons, Plaintiffs' Fourth Claim for Relief, under California's Unfair

17  Competition Law (the "UCL"), Business and Professions Code section 17200, fails to state a

18  claim upon which relief can be granted.

19        *First*, Plaintiffs lack standing to sue under the UCL because they have not alleged, and

20  cannot allege, that they "suffered injury in fact and ha[ve] lost money or property as a result of

21  such unfair competition." Cal. Bus. & Prof. Code § 17204; *see also Californians for Disability

22  Rights v. Mervyn's, LLC,* 39 Cal. 4th 223, 227 (2006); *Animal Legal Defense Fund v. Mendes*,

23  160 Cal. App. 4th 136, 145, 148 (2008).  Plaintiffs' conclusory allegation that "Plaintiffs have

24  suffered injury-in-fact" (Compl. ¶ 38) and their request in the Prayer for Relief for "actual

25  damages to each class member," without <u>any</u> factual allegations suggesting that such injury exists

26  or is imminent, is insufficient to satisfy this element.  Plaintiffs also have not alleged that they lost

27  any money or property, nor could they as Facebook is, and always has been, a free service.  *See

28  Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305, 1346 (2009) (the California proposition

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15.

FACEBOOK'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. 10-CV-05282-RS

1   adding the "injury in fact" requirement referred specifically to the standing requirements of the

2   United States Constitution, which include "actual or imminent, not 'conjectural' or

3   'hypothetical'" injury) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

4       *Second*, Plaintiffs have not sufficiently alleged that Facebook acted "unlawfully" in

5   contravention of the UCL.  Plaintiffs purport to bring claims for alleged violation their common

6   law and statutory publicity rights, as well as the false association section of the Lanham Act.

7   However, as shown above, Plaintiffs have failed to allege facts sufficient to state those claims,

8   and thus Plaintiffs' claim under the "unlawful" prong of section 17200 necessarily fails as well.

9   *See Whiteside v. Tenet Healthcare Corp.*, 101 Cal. App. 4th 693, 706 (2001) ("unlawful" claim

10   under UCL fails where there is no claim based on underlying statute).

11       *Third*, Plaintiffs have not alleged facts showing that Facebook acted "unfairly" within the

12   meaning of the UCL.  California courts have held that in order to state a claim for an "unfair"

13   business practice in the context of a UCL consumer action,[10] a plaintiff must allege facts

14   sufficient to establish: (1) substantial consumer injury; (2) that the injury is not outweighed by

15   countervailing benefits to consumers; and (3) that the injury is one that consumers could not

16   reasonably have avoided.  *Camacho v. Auto. Club of S. Cal.*, 142 Cal. App. 4th 1394, 1403 (2006)

17   (referring to factors under section 5 of Federal Trade Commission Act, codified at 15 U.S.C.

18   § 45(n)); *accord Davis v. Ford Motor Credit Co.*, 179 Cal. App. 4th 581, 596 (2009).  But, as

19   discussed above, Plaintiffs have not sufficiently pled *any* injury, let alone a "substantial" injury.

20   Nor have they suggested that any such injury is "not outweighed by countervailing benefits to

21   consumers."  On the contrary, they acknowledge that via "Friend Finder" Users can connect with

22

23

24

25

---

[10] In *Cel-Tech Commc'ns., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 185 (1999), the
26   California Supreme Court reviewed definitions of "unfair" that had been developed by the lower
courts and concluded they were "too amorphous and provide[d] too little guidance to courts and
27   businesses."  The Court adopted a test for competitor actions, but did not decide what test should
28   apply in consumer actions.  *Id.* at 186-87.

Cooley LLP
Attorneys At Law
San Francisco

16.

Facebook's Motion to Dismiss
Class Action Complaint
Case No. 10-cv-05282-RS

1  other Facebook Users (Compl. ¶ 33), one of the primary reasons people join.   Therefore,

2  Plaintiffs' claim under the "unfair" prong of section 17200 should be dismissed.[11]

3      *Fourth*, Plaintiffs have not alleged that Facebook is liable under the "fraudulent" prong of

4  section 17200 (*see* Compl. ¶¶ 70-76), and, even if they had, Plaintiffs have not alleged facts that

5  would state a claim under that prong.   Claims brought under the "fraud" prong of the UCL must

6  be pled with particularity under Federal Rule of Civil Procedure 9(b).   *See Kearns v. Ford Motor*

7  *Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (claims brought under the fraud prong of the UCL must

8  be pled with specificity, stating "with particularity the circumstances that constitute the fraud"

9  including the "who, what, when, where, and how' of the misconduct charged").   To state a claim,

10  the Complaint must allege with particularity facts demonstrating (1) a misrepresentation, (2)

11  knowledge of its falsity, (3) intent to induce reliance, (4) that the reliance was justified, and (5)

12  damages.   *Id.* at 1126 (citing *Engalla v. Permanente Med. Group, Inc.*, 15 Cal. 4th 951, 974

13  (1997)).   The Complaint does not allege with specificity which acts or statements by Facebook

14  were purportedly fraudulent or constituted misrepresentations, that Facebook intended to induce

15  Plaintiffs' reliance, or the manner in which they purportedly induced some action by the named

16  Plaintiffs.   Nor does the Complaint allege when statements about the "Friend Finder" service

17  were purportedly made to Plaintiffs, nor when their own names and/or likenesses were used, if

18  ever.   In short, the Complaint does nothing to describe the "circumstances" surrounding any

19  alleged fraud, and thus fails to state a claim.

20      Further, a claim under the "fraud" prong could not survive given the clear language on the

21  Facebook website.   (*See supra* § IV(A)(1).)   Where explanatory language is clear and

22  _____

23  [11] After *Cel-Tech*, courts have used two other tests.   *Drum v. San Fernando Valley Bar Ass'n*, 182
Cal. App. 4th 247, 256 (2010).   One requires that the unfair conduct be contrary to some
24  legislatively declared public policy that is "tethered to specific constitutional, statutory, or
regulatory provisions."   The other, essentially a pre-*Cel-Tech* test, requires that the business
25  practice be "immoral, unethical, oppressive, unscrupulous or substantially injurious to
consumers" and that the court "weigh the utility of the defendant's conduct against the gravity of
26  the harm to the alleged victim."   *Id.* at 256-57.   Plaintiffs fail to allege unfairness under either test,
as they allege neither a legislatively declared public policy limiting Facebook's use of
27  information voluntarily posted by users that is "tethered to specific constitutional, statutory, or
regulatory provision" nor harm substantial enough to outweigh the utility of Facebook's services.

28

1    unambiguous, the language defeats a fraud claim under section 17200 as a matter of law.  *See*

2    *Freeman v. Time, Inc.* 68 F.3d 285, 289 (9th Cir. 1995) (affirming dismissal of UCL claims

3    where plaintiff could have learned terms by doing a "sufficient reading" of the mailer); *Van Ness*

4    *v. Blue Cross of Cal.*, 87 Cal. App. 4th 364, 376 (2001) (dismissing claim that insurance policy

5    was deceptive under fraud prong of 17200 where the policy "clearly stated the terms of

6    coverage").   As  discussed above, the SRR informs Users that by using the website they give

7    Facebook a "non-exclusive, transferable, sub-licensable, royalty-free, worldwide license to use

8    any IP content [including photos] that [Users] post on or in connection with Facebook."  (Yang

9    Decl. Ex. A,  § 2.)   In addition, the Privacy Policy informs Users that "your name and profile

10   picture do not have privacy settings," and that Facebook will "use the information we collect to

11   provide our services and features to you . . . ."  (*Id.* Ex. C, §§ 3, 5.)  Because the SRR and Privacy

12   Policy disclose in multiple places that Users' names and/or likenesses may be used in association

13   with Facebook services, and that using the website constitutes consent to such use, Plaintiffs

14   cannot allege that Facebook made a false representation regarding the use.

15           Finally, Plaintiffs cannot assert a claim for monetary relief.  Under the UCL, monetary

16   relief is limited to restitution, *see Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134,

17   1148 (2003), and Plaintiffs do not and cannot allege they paid money to Facebook.

18   **V.    CONCLUSION**

19           For the foregoing reasons, Plaintiffs' Class Action Complaint should be dismissed.

20

21   Dated: January 11, 2011                          COOLEY LLP

22

23                                                     /s/ Matthew D. Brown
                                                      Matthew D. Brown (196972)
24                                                     Attorneys for Defendant FACEBOOK, INC.

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18.

FACEBOOK'S MOTION TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. 10-CV-05282-RS