1   COOLEY LLP
    MICHAEL G. RHODES (116127)
2   (rhodesmg@cooley.com)
    MATTHEW D. BROWN (196972)
3   (brownmd@cooley.com)
    JEFFREY M. GUTKIN (216083)
4   (jgutkin@cooley.com)
    101 California Street, 5th Floor
5   San Francisco, CA  94111-5800
    Telephone:     (415) 693-2000
6   Facsimile:     (415) 693-2222

7   Attorneys for Defendant
    FACEBOOK, INC.

8

9                   UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11                    SAN FRANCISCO DIVISION

12

| 13 | ROBYN COHEN, SHANNON STOLLER, CHRISTOPHER MARSHALL, BRYAN SIGLOCK, and DEBRA LEWIN, individually and on behalf of others similarly situated, | Case No.  10-cv-05282-RS |
|---|---|---|
| 14 | | **FACEBOOK, INC.'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT** |
| 15 | | |
| 16 | Plaintiffs, | **F.R.C.P. 12(b)(1) & 12(b)(6)** |
| 17 | v. | |
| 18 | FACEBOOK, INC., a Delaware corporation, | Date:        September 8, 2011 Time:        1:30 p.m. Courtroom:  3 |
| 19 | Defendant. | Judge:       Hon. Richard Seeborg Trial Date:  None Set |
| 20 | | |
| 21 | | |

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS ................................................................ 1

STATEMENT OF RELIEF SOUGHT ........................................................................................ 1

STATEMENT OF ISSUES TO BE DECIDED ........................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 2

I.    INTRODUCTION ............................................................................................................. 2

II.   STATEMENT OF FACTS ................................................................................................ 3

III.  APPLICABLE STANDARDS .......................................................................................... 5

IV.   ARGUMENT ..................................................................................................................... 6

    A.    Plaintiffs Have Not Alleged Injury in Fact and thus Lack Article III Standing (All Claims) ................................................................................................... 6

    B.    Plaintiffs Fail to State a Claim for Violation of the Common Law or Statutory Right of Publicity (First and Second Claims) ....................................... 11

    C.    Plaintiffs Fail to State a Claim for Violation of the UCL (Third Claim for Relief) ............................................................................................................................. 14

        1.    Plaintiffs Do Not Satisfy the UCL's More Restrictive Standing Requirements ...................................................................................................... 14

        2.    The FAC Fails to State a Claim Under any of the Three Prongs of the UCL ................................................................................................................ 16

            a.    Plaintiffs Have Not Stated an "Unlawful"-Prong Claim ............... 16

            b.    Plaintiffs Have Not Stated an "Unfair"-Prong Claim ................... 17

            c.    Plaintiffs Have Not Stated a "Fraudulent"-Prong Claim .............. 18

    D.    Plaintiffs' Claims Should Be Dismissed with Prejudice ...................................... 20

V.    CONCLUSION ................................................................................................................. 20

# TABLE OF AUTHORITIES

Page(s)

CASES

*Allen v. City of Beverly Hills*,
 911 F.2d 367 (9th Cir. 1990)................................................................................................... 21

*Animal Legal Defense Fund v. Mendes*,
 160 Cal. App. 4th 136 (2008) ............................................................................................... 15

*Archer v. United Rentals, Inc.*,
 195 Cal. App. 4th 807 (2011) ................................................................................................. 9

*Ashcroft v. Iqbal*,
 129 S. Ct. 1937 (2009) ....................................................................................... 6, 9, 16, 17

*Avila v. Countrywide Home Loans*,
 No. 10-CV-05485-LHK, 2010 WL 5071714 (N.D. Cal. Dec. 7, 2010) .......................... 17, 19

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)............................................................................................ 6, 9, 16, 18

*Californians for Disability Rights v. Mervyn's, LLC*,
 39 Cal. 4th 223 (2006) ......................................................................................................... 15

*Camacho v. Auto. Club of S. Cal.*,
 142 Cal. App. 4th 1394 (2006) ............................................................................................. 18

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*,
 20 Cal. 4th 163 (1999) ......................................................................................................... 18

*Davis v. Ford Motor Credit Co.*,
 179 Cal. App. 4th 581 (2009) ............................................................................................... 18

*Drum v. San Fernando Valley Bar Ass'n*,
 182 Cal. App. 4th 247 (2010) ............................................................................................... 19

*Dwyer v. Am. Express Co.*,
 652 N.E.2d 1351 (Ill. App. Ct. 1995) ..................................................................................... 9

*Edwards v. First Am. Corp.*,
 610 F.3d 514 (9th Cir. 2010).................................................................................................. 11

*Engalla v. Permanente Med. Group, Inc.*,
 15 Cal. 4th 951 (1997) ......................................................................................................... 19

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*First Am. Corp. v. Edwards*,
  No. 10-708, ---S. Ct. ---, 2011 WL 2437037 (U.S. June 20, 2011) ........................................ 11

*Folgelstrom v. Lamps Plus, Inc.*,
  195 Cal. App. 4th 986 (2011) ........................................................................................ 9, 18

*Freeman v. Time, Inc.*,
  68 F.3d 285 (9th Cir. 1995)................................................................................................. 21

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
  528 U.S. 167 (2000)............................................................................................................... 7

*Gladstone Realtors v. Vill. of Bellwood*,
  441 U.S. 91 (1979).............................................................................................................. 11

*In re Doubleclick Inc. Privacy Litig.*,
  154 F. Supp. 2d 497 (S.D.N.Y. 2001)................................................................................... 9

*In re Facebook Privacy Litig.*,
  No. C 10-02389 JW, 2011 WL 2039995 (N.D. Cal. May 12, 2011) .................................... 15

*In re JetBlue Airways Corp. Privacy Litig.*,
  379 F. Supp. 2d 299 (E.D.N.Y. 2005) ................................................................................... 9

*Jones v. PNC Bank, N.A.*,
  10-CV-01077-LHK, 2010 WL 3325615 (N.D. Cal. Aug. 20, 2010).................................... 18

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009)....................................................................................... 18, 19

*Kwikset Corp. v. Super. Ct.*,
  51 Cal. 4th 310 (2011) ................................................................................................... 15, 16

*LaCourt v. Specific Media, Inc.*,
  No. SACV 10-1256-GW(JCGx), 2011 WL 1661532 (C.D. Cal. Apr. 28, 2011)................... 9

*Lee v. Chase Manhattan Bank*,
  No. C07-04732 MJJ, 2008 WL 698482 (N.D. Cal. Mar. 14, 2008) ...................................... 10

*Lewis v. Casey*,
  518 U.S. 343 (1996)............................................................................................................... 7

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
  350 F.3d 1018 (9th Cir. 2003).......................................................................................... 7, 8

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Los Angeles Haven Hospice, Inc. v. Sebelius*,
   638 F.3d 644 (9th Cir. 2011) ................................................................................ 10

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ............................................................................... 10, 11

*Miller v. Collectors Universe, Inc.*,
   159 Cal. App. 4th 988 (2008) ................................................................. 13

*Navarro v. Block*,
   250 F.3d 729 (9th Cir. 2001) .................................................................. 6

*Newcombe v. Adolf Coors Co.*,
   157 F.3d 686 (9th Cir. 1998) ................................................... 11, 12, 13

*Parrino v. FHP, Inc.*,
   146 F.3d 699 (9th Cir. 1998) .................................................................. 6

*Raines v. Byrd*,
   521 U.S. 811 (1997) .............................................................................. 11

*Robins v. Spokeo, Inc.*,
   No. CV10-05306 ODW, 2011 WL 597867 (C.D. Cal. Jan. 27, 2011) ................... 10

*Slivinsky v. Watkins-Johnson Co.*,
   221 Cal. App. 3d 799 (1990) ................................................................. 12

*Steckman v. Hart Brewing, Inc.*,
   143 F.3d 1293 (9th Cir. 1998) ............................................................... 21

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) ................................................................................. 6

*Summers v. Earth Island Inst.*,
   129 S. Ct. 1142 (2009) .......................................................................... 11

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ............................................................. 6, 20

*Thompson v. Home Depot, Inc.*,
   No. 07-cv-1058 IEG, 2007 WL 2746603 (S.D. Cal. Sept. 18, 2007) ...................... 9

*Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*,
   594 F.2d 730 (9th Cir. 1979) .................................................................. 5

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Van Ness v. Blue Cross of Cal.*,
    87 Cal. App. 4th 364 (2001) ................................................. 21

*Whiteside v. Tenet Healthcare Corp.*,
    101 Cal. App. 4th 693 (2002) ............................................ 17

*Whitmore v. Ark.*,
    495 U.S. 149 (1990) ........................................................ 7

STATUTES

15 U.S.C.
    § 45(a) .......................................................................... 17

Cal. Bus. & Prof. Code
    § 17200 ................................................................... passim
    § 17204 ................................................................... 11, 15

Cal. Civ. Code
    § 3344 .................................................................... passim

OTHER AUTHORITIES

Federal Rules of Civil Procedure

    8(a) ............................................................... 16, 17, 18
    9(b) ................................................................... 18, 19
    12(b)(1) ............................................................... 1, 2, 5
    12(b)(6) ............................................................... 1, 2, 6

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**NOTICE OF MOTION AND MOTION TO DISMISS**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 8, 2011 at 1:30 p.m. or as soon thereafter as this motion may be heard in the above-entitled court, located at 450 Golden Gate Avenue, San Francisco, California, in Courtroom 3 (17th Floor), Defendant Facebook, Inc. ("Facebook") will and hereby does move to dismiss with prejudice the First Amended Class Action Complaint (the "FAC") filed by Plaintiffs.  Facebook's Motion is made pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the accompanying Request for Judicial Notice, the Declaration of Ana Yang Muller and accompanying Exhibits filed herewith, and all pleadings and papers on file in this matter, and upon such other matters as may be presented to the Court at the time of the hearing or otherwise.

**STATEMENT OF RELIEF SOUGHT**

Facebook seeks an order, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), dismissing with prejudice Plaintiffs' FAC and each of the three Claims for Relief alleged therein for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Because Plaintiffs fail to allege any injury in fact and thus lack Article III standing, should their FAC be dismissed for lack of subject matter jurisdiction?

2.      Because the FAC fails to state a claim upon which relief can be granted under the California statute on misappropriation of the right of publicity, Civil Code section 3344, should the First Claim for Relief be dismissed?

3.      Because the FAC fails to state a claim upon which relief can be granted under California common law on misappropriation of the right of publicity, should the Second Claim for Relief be dismissed?

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1.

FACEBOOK'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
NO. 10-CV-05282-RS

1    4.    Because the FAC fails to state a claim upon which relief can be granted under

2  California Business and Professions Code section 17200, should the Third Claim for Relief be

3  dismissed?

4    **MEMORANDUM OF POINTS AND AUTHORITIES**

5  **I.    INTRODUCTION**

6    On June 28, 2011, this Court ruled that each of the four claims in Plaintiffs' original

7  Complaint ("Original Complaint") failed as a matter of law.  (*See* Order Granting Motion to

8  Dismiss ("Dismissal Order") at 11.)  Plaintiffs' First Amended Complaint ("FAC") attempts to

9  salvage their remaining claims but ultimately suffers from the same deficiencies that were fatal to

10  the Original Complaint.

11    The core allegations in the FAC remain the same: that Facebook displayed Plaintiffs'

12  names and/or likenesses without consent in connection with the free "Friend Finder" utility,

13  thereby violating Plaintiffs' common law and statutory publicity rights (California Civil Code

14  section 3344) and California Business and Professions Code section 17200 (the "UCL").[1]

15  Ignoring the Court's guidance as to what must be alleged to state legally sufficient claims,

16  Plaintiffs still fail to allege any injury in fact and thus still lack Article III standing to bring any of

17  their claims.  The FAC should therefore be dismissed under Rule 12(b)(1).  The FAC should also

18  be dismissed for failure to state a claim under Rule 12(b)(6).  As to the common law and statutory

19  misappropriation claims, they fail as a matter of law because the FAC includes no allegations of

20  emotional injury, which the Court held was a "minimum" requirement for both claims.  As to the

21  UCL claim, Plaintiffs still have not (and cannot) allege that they suffered "injury in fact" and

22  "lost money or property" as a result of the alleged use of their names and likenesses in connection

23  with Friend Finder; thus, Plaintiffs do not satisfy the UCL's more restrictive standing

24  requirements.  The FAC also fails to allege facts that would support such a cause of action under

25  the "unlawful," "unfair," or "fraudulent" prongs of the UCL.

26    Accordingly, the FAC should be dismissed, with prejudice, for failure to state a claim.

27

28

---

[1]  Plaintiffs' Original Complaint included a claim under the Lanham Act, which Plaintiffs have abandoned in the FAC.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2.

FACEBOOK'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
NO. 10-CV-05282-RS

## II.   STATEMENT OF FACTS[2]

Facebook is a free social networking website that enables people to connect and share with their friends, families, and communities.  To join, Facebook users ("Users") need only provide their real name, age, gender, and a valid e-mail address, and agree to Facebook's terms of service.  Once a User has joined Facebook, he or she can create a personal profile page.  (FAC ¶¶ 24-25.)  The profile page includes the User's name, and may, but need not, include a "profile picture" chosen and uploaded by the User.[3]   On Users' profile pages, Users can post any information or content they wish, including their interests, education, or updates about what they are doing that day (*i.e.*, "status updates").  (*Id.* ¶ 26.)

Users may also connect with their friends and family members.  (*Id.* ¶ 25.)  To do so, one User must send a request to another Facebook User with whom he wishes to connect, asking the other User to accept him as a "Friend."  If Facebook Users become Friends with each another, that connection—along with their profile pictures—is published on their respective profile pages and to their Friends (e.g., "John Smith is now friends with Jane Doe."), who may be interested in also making a Friend request.  Once Users are Friends, they can both see items on each other's profile pages.  (*Id.*)  For example, Friends can see each other's photos, videos, groups on Facebook to which they belong, or anything else the User chooses to share.  (*Id.* ¶¶ 25-26.)  If a User changes his or her profile picture, that change (and the new picture) is published to his or her Friends.  Users can also communicate on Facebook through various messaging features, including chat, private messaging, wall posts, and status updates.  (*Id.* ¶ 26.)  As the Court observed in the Dismissal Order, "Facebook exists because its users *want* to share information—often about themselves—and to obtain information about others, within and among groups and subgroups of persons they already know or with whom they become acquainted through using Facebook."

---

[2] By discussing the FAC's factual allegations for purposes of this motion, Facebook does not thereby make any admission of fact.

[3] Users can and do use a range of photos for their profile pictures, including pets, cars, nature scenes, etc.  The FAC does not allege that the named Plaintiffs uploaded a profile picture that was an actual "likeness" of themselves.  The FAC does not provide information sufficient to confirm that Plaintiffs are Facebook Users or to locate their profile pages.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3.

FACEBOOK'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
NO. 10-CV-05282-RS

1    (Dismissal Order at 1.)

2           Facebook is, and has always been, a free service.  Facebook earns revenue in part by

3    serving third-party advertisements that appear on the right side of the page a User may be

4    viewing.  (FAC ¶¶ 8, 28.)  Advertisers can target their advertisements to Facebook Users based

5    on anonymous demographic criteria (*e.g.*, age, gender, home state, or interests).  (*See id.* ¶¶ 30-

6    31.)

7           "Friend Finder" is a Facebook service that  enables a User to upload his or her email

8    contacts to Facebook for free to identify people the User may know who are also Facebook Users.

9    (*Id.* ¶ 37.)  If there is a match, the User may then send the other person a Friend request.  (*Id.*

10   ¶ 11.)  To use Friend Finder, the User must identify the relevant email service and provide his or

11   her username and password.  (*Id.* ¶ 37.)  When a User chooses to use Friend Finder, Facebook

12   informs the User:  "We may use the email addresses you upload through this importer to help you

13   connect with friends, including using this information to generate Suggestions for you and your

14   contacts on Facebook."  (*Id.*)  Plaintiffs allege that Facebook employs Friend Finder to increase

15   Facebook's user base, which they claim may increase the revenue Facebook can earn by selling

16   advertising space.  (*Id.* ¶¶ 29, 40.)   The FAC does not allege that advertisers may target

17   advertisements to Users based on use or non-use of Friend Finder.

18          Plaintiffs complain that Facebook promotes Friend Finder to Users by displaying the

19   names and/or likenesses of their Friends who used it.  (FAC ¶¶ 4, 12, 38-39.)  They allege that

20   Facebook also includes words to the effect that the User's Friends "'found friends using the

21   Friend Finder,' and suggesting that the user also 'Give it a try!'"  (*Id.* ¶¶ 12, 38.)  Plaintiffs allege

22   that Facebook used their "names, likenesses, and/or photographic or digital images" without their

23   consent, in violation of the common law right of publicity, California Civil Code section 3344

24

25

26

27

28

Cooley LLP
Attorneys At Law
San Francisco

4.

Facebook's Motion to Dismiss
First Amended Complaint
No. 10-CV-05282-RS

1   (the statutory right of publicity), and the UCL.[4]   Plaintiffs assert that Facebook's "terms and

2   conditions"—including, specifically, its Principles, the Statement of Rights and Responsibilities,

3   and its "newly revised privacy statement"—do not inform Users that their names and profile

4   pictures may be used "to promote services of Facebook." (*Id.* ¶¶ 10, 35, 77-81.) Plaintiffs also

5   allege that, even though Facebook's terms disclose that Users' names and profile pictures "may

6   be associated with commercial, sponsored or related content" subject to applicable privacy

7   settings, Users cannot actually "grant or deny consent to such uses." (*Id.* ¶¶ 79-81.)

8          As they did in the Original Complaint, Plaintiffs allege, without elaboration or specificity,

9   that these actions, along with Facebook's "failure to provide compensation," caused them to

10  suffer "injury-in-fact" and a "loss of money and property." (*See, e.g.*, FAC ¶ 16.) Plaintiffs do

11  not allege any hurt feelings or other actual injury. Nor do they allege that the right to use their

12  names or likenesses has any readily ascertainable value or was impaired in any way. Instead,

13  Plaintiffs allege that their names and likenesses have some value because Facebook used them to

14  promote a (free) service. (*Id.* ¶¶ 15, 59.) Plaintiffs also claim that Facebook misappropriated "a

15  property interest in the use of their names and likenesses," which they claim "[is], or *ha[s] been*

16  *compared to*, intellectual property." (*Id.* ¶¶ 16, 42-43 (emphasis added), 84.)

17  **III.   APPLICABLE STANDARDS**

18         A court may dismiss a claim under Federal Rule of Civil Procedure 12(b)(1) based on lack

19  of subject matter jurisdiction, and the motion may attack either the complaint on its face or the

20  existence of jurisdiction in fact. *See Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d

21  730, 732-33 (9th Cir. 1979). If a complaint does not establish standing under Article III of the

22  U.S. Constitution, a federal court does not have subject matter jurisdiction to hear the case. *See*

---

23  [4] Plaintiffs also allege in passing, on information and belief, that Facebook sometimes uses Users'

24  e-mail contacts to solicit persons who are not yet Facebook Users to join. There is no suggestion
    that this was allegedly the case for any of the named Plaintiffs. (*Id.* ¶ 11.) In any event, the FAC

25  admits that the terms on Facebook's website inform Users that Facebook reserves the right to use
    email contacts uploaded through Friend Finder to ask people to join Facebook. (*Id.* ¶ 37.)

26  Plaintiffs have dropped their allegation—made in the Original Complaint and questioned by the
    Court in the Dismissal Order (Dismissal Order at 6 n.2)—that Facebook used the names or

27  likenesses of Users who never used Friend Finder. (*Compare* Original Complaint ¶ 11 *with* FAC

28  ¶ 12.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5.

FACEBOOK'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
NO. 10-CV-05282-RS

1    *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-02 (1998).

2            A court may dismiss a claim under Rule 12(b)(6) when "there is no cognizable legal

3    theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v.*

4    *Block*, 250 F.3d 729, 732 (9th Cir. 2001).  In deciding a motion under Rule 12(b)(6), "all material

5    allegations of the complaint are accepted as true, as well as all reasonable inferences to be drawn

6    from them." *Id.*  However, as the Supreme Court has emphasized, "labels and conclusions, and a

7    formulaic recitation of the elements of a cause of action will not" suffice. *Bell Atl. Corp. v.*

8    *Twombly*, 550 U.S. 544, 555 (2007).  "[A] complaint must contain sufficient factual matter,

9    accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial

10   plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

11   inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct.

12   1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).  A plaintiff must therefore plead "more

13   than a sheer possibility that a defendant has acted unlawfully." *Id.*

14           Additionally, as discussed in greater detail in the accompanying Request for Judicial

15   Notice filed herewith, "in order to '[p]revent [] plaintiffs from surviving a Rule 12(b)(6) motion

16   by deliberately omitting . . . documents upon which their claims are based,' a court may consider

17   a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies

18   on the document and its authenticity is unquestioned." *See Swartz v. KPMG LLP*, 476 F.3d 756,

19   763 (9th Cir. 2007) (citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) (incorporating

20   by reference insurance terms of service and administrative documents because the claim

21   necessarily relied on plaintiff having been a member of the insurance plan)).

22   **IV.   ARGUMENT**

23           **A.     Plaintiffs Have Not Alleged Injury in Fact and thus Lack Article III Standing**
24                    **(All Claims).**

25           To have Article III standing to maintain an action in federal court, a plaintiff bears the

26   burden of alleging facts sufficient to establish that "(1) [the plaintiff] has suffered an 'injury in

27   fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or

28   hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6.

FACEBOOK'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
NO. 10-CV-05282-RS

1   is likely, as opposed to merely speculative, that the injury will be redressed by a favorable

2   decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81

3   (2000). The alleged injury in fact must be "concrete in both a qualitative and temporal sense."

4   *Whitmore v. Ark.*, 495 U.S. 149, 155 (1990). Plaintiffs must "allege an injury to [themselves] that

5   is 'distinct and palpable' as opposed to merely '[a]bstract,' and the alleged harm must be actual or

6   imminent, not 'conjectural' or 'hypothetical.'" *Id.* (citations omitted). In a putative class action,

7   the named plaintiffs purporting to represent the class must establish that they personally have

8   standing to bring the cause of action. If the named plaintiffs cannot maintain the action on their

9   own behalf, they may not seek such relief on behalf of the class. *See Lewis v. Casey*, 518 U.S.

10  343, 357 (1996) ("[E]ven named plaintiffs who represent a class 'must allege and show that they

11  personally have been injured, not that injury has been suffered by other, unidentified members of

12  the class to which they belong and which they purport to represent.'" (citations omitted)); *Lierboe*

13  *v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1020 (9th Cir. 2003) (same). Because

14  Plaintiffs have not adequately pled any injury, the FAC should be dismissed.

15      Although not couched specifically in Article III terms, this Court dismissed Plaintiffs'

16  Original Complaint because it did not allege injury to Plaintiffs resulting from any alleged

17  conduct by Facebook. The Court held that Plaintiffs' assertion, made at least twice in the

18  Original Complaint, that they "'have suffered injury-in-fact by having their name[s] and

19  likeness[es] misappropriated without their knowledge or consent'" was conclusory and did not

20  constitute sufficient pleading of injury. (Dismissal Order at 8-9 (quoting Original Complaint).)

21  Despite the Court's holding, Plaintiffs have repeated essentially the same conclusory assertion in

22  the FAC. (*Compare* Original Complaint ¶¶ 13, 38 *with* FAC ¶¶ 16, 42; *compare also* Original

23  Complaint ¶¶ 53-55 *with* FAC ¶¶ 60, 62, 71.) As was the case with the Original Complaint, these

24  conclusory assertions in the FAC do not adequately plead injury, and the FAC should be

25  dismissed for lack of standing.

26      The Court provided Plaintiffs with explicit guidance on what facts they would need to

27  allege to state legally sufficient claims. For their misappropriation claims, the Court explained,

28  "plaintiffs must, at a minimum, plead that they suffered mental anguish as a result of the alleged

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7.

FACEBOOK'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
NO. 10-CV-05282-RS

1  misappropriation, and a plausible supporting factual basis for any such assertion." (Dismissal

2  Order at 9.)  For their UCL claim, the Court stated, Plaintiffs must allege that they suffered the

3  "loss of money or property" necessary to state a claim under the UCL.  (*Id.* at 11.)  Despite this

4  clear direction, the FAC does not include *any* allegations of emotional injury resulting from

5  Facebook's actions, much less facts demonstrating mental anguish.  Indeed, it is inconceivable

6  that disclosure to Plaintiffs' Facebook friends that they have used Friend Finder has caused them

7  any mental anguish.  (*Cf. id.* at 9 ("Plaintiffs have not shown how the mere disclosure to their

8  Facebook friends that they have employed the Friend Finder service . . . causes them any

9  cognizable harm, regardless of the extent to which that disclosure could also be seen as an

10  implied endorsement by them of the service.").)

11      The FAC includes only the most conclusory allegations regarding Plaintiffs' loss of

12  money or property, alleging that Plaintiffs were deprived of "the reasonable value of the use of

13  [their] names, likenesses, and/or photographic or digital images" and suffered "a loss of money

14  and (intellectual) property."  (FAC ¶¶ 16, 42.)  Such conclusory allegations are insufficient and

15  should be rejected.  *See, e.g.*, *Twombly*, 550 U.S. at 555 (noting the court need not accept the truth

16  of legal conclusions couched as factual allegations); *LaCourt v. Specific Media, Inc.*, No. SACV

17  10-1256-GW(JCGx), 2011 WL 1661532, at *3 (C.D. Cal. Apr. 28, 2011) ("Conclusory

18  statements, unlike proper factual allegations, are not entitled to a presumption of truth.").

19  (*Accord* Dismissal Order at 9 ("Moreover, even if plaintiffs had included a conclusory assertion

20  of 'hurt feelings,' they have alleged no facts that would suffice to show a plausible entitlement to

21  relief.  *See Iqbal*, 129 S. Ct. at 1950.").)

22      Plaintiffs assert that their names and likenesses have "economic value" because

23  "Facebook ascribed at least some value" by virtue of using them (FAC ¶¶ 15-16, 59, 61-62), and

24  that they have "a property interest in the use of their names and likenesses," which Facebook

25  misappropriated (*id.* ¶¶ 16, 42-43).  But courts have heard and rejected these arguments before.

26  *See In re Doubleclick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 525 (S.D.N.Y. 2001) (although

27  demographic information had value to website which aggregated it, there was no "economic loss

28  to the subject"); *LaCourt,* 2011 WL 1661532, at *2 (plaintiffs failed to adequately allege injury in

Cooley LLP
Attorneys At Law
San Francisco

8.

Facebook's Motion to Dismiss
First Amended Complaint
No. 10-cv-05282-RS

fact because they provided no facts showing they "ascribed an economic value" to their personal information, attempted a value-for-value exchange of the information, or were deprived of its value); *Dwyer v. Am. Express Co*., 652 N.E.2d 1351, 1356 (Ill. App. Ct. 1995) (cardholder name has little or no intrinsic value apart from its inclusion on a categorized list; instead, "[d]efendants create value by categorizing and aggregating" the names); *Thompson v. Home Depot, Inc.*, No. 07-cv-1058 IEG (WMc), 2007 WL 2746603, at *3 (S.D. Cal. Sept. 18, 2007) (use of plaintiff's personal information, including a name, for marketing purposes did not confer a property interest to plaintiff under the UCL); *In re JetBlue Airways Corp. Privacy Litig*., 379 F. Supp. 2d 299, 327 (E.D.N.Y. 2005) ("there is [] no support for the proposition that an individual passenger's personal information has or had any compensable value in the economy at large"); *Archer v. United Rentals, Inc.*, 195 Cal. App. 4th 807, 816 (2011) (holding that "collection and recordation" of plaintiffs' personal information did not constitute loss of money or property); *Folgelstrom v. Lamps Plus, Inc*., 195 Cal. App. 4th 986, 993-994 (2011) (rejecting  plaintiff's claim he had an "intellectual property" interest in his home address or that he suffered any economic harm under the UCL based on defendant's collection and licensing of his personal information, noting that the fact that the information had value to defendant—defendant received licensing fees—"does not mean that its value to plaintiff was diminished in any way").

Further, these arguments simply repeat those already found insufficient by the Court.  (*See* Original Complaint ¶ 7 (alleging Facebook has a commercial motivation to use Friend Finder); ¶ 27 (alleging that User information has commercial value to advertisers); ¶ 29 (alleging that Facebook attempts to "monetize" User's personal information); ¶ 37 (alleging that the use of names and/or likenesses has "a direct commercial purpose" to increase membership and use of Facebook).)  Moreover, Plaintiffs allege no facts suggesting that their names or likenesses have any commercial value or that they could have received payment for their names or likenesses, but for Facebook's alleged conduct.  To the contrary, Plaintiffs admit that they are "not famous" and there may not be a "ready market value" for the use of their names or likenesses.  (FAC ¶¶ 58, 60.)  Thus, Plaintiffs have not asserted a plausible factual basis supporting the injury in fact that is necessary for standing.

Cooley LLP
Attorneys At Law
San Francisco

9.

Facebook's Motion to Dismiss
First Amended Complaint
No. 10-cv-05282-RS

1    Nor can Plaintiffs save their claim by arguing that a mere allegation of a statutory

2    violation confers standing.   Courts have repeatedly rejected that contention.   *Lee v. Chase*

3    *Manhattan Bank*, No. C07-04732 MJJ, 2008 WL 698482, at *5 (N.D. Cal. Mar. 14, 2008) ("[T]he

4    mere allegation of a violation of a California statutory right, without more, does not confer Article

5    III standing.   A plaintiff invoking federal jurisdiction must also allege some actual or imminent

6    injury resulting from the violation . . . ." (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555,

7    560-61 (1992))); *see also Robins v. Spokeo, Inc.*, No. CV10-05306 ODW (AGRx), 2011 WL

8    597867, at *1 (C.D. Cal. Jan. 27, 2011) (website's alleged statutory violation insufficient for

9    standing purposes without allegations of "actual or imminent" harm); *cf. Los Angeles Haven*

10   *Hospice, Inc. v. Sebelius*, 638 F.3d 644, 656 (9th Cir. 2011) (noting "less tangible forms of injury,

11   such as the deprivation of an individual right conferred by statute *may* confer Article III standing

12   if the harm is "sufficiently particularized and concrete to demonstrate injury-in-fact").   This flows

13   from the often cited maxim that a plaintiff has standing only if he suffers "a distinct and palpable

14   injury to himself."   *See Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 100 (1979) (citation

15   omitted); *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997) ("It is settled that Congress cannot erase

16   Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would

17   not otherwise have standing."); *Summers v. Earth Island Inst.*, 129 S. Ct. 1142, 1151 (2009)

18   ("[I]njury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute.").   In

19   fact, the Court has recognized that a mere allegation of a statutory violation (even one that

20   provides for statutory damages) does not adequately allege injury.  (Dismissal Order at 9.)

21   Even if this Court were to follow decisions which find Article III standing based on

22   alleged violation of a statute (which are counter to established law), Plaintiffs have failed to meet

23   that standard.   Those decisions look to the statute's text to determine whether a plaintiff has

24   alleged all the required elements.   *See Edwards v. First Am. Corp.*, 610 F.3d 514, 517 (9th Cir.

25   2010) (court must look to statute's text to determine whether plaintiffs alleged violation that

26   conferred Article III standing).[5]   As discussed above and in more detail below, Plaintiffs have not

_____

[5] On June 20, 2011, the United States Supreme Court granted a writ of certiorari in the case.   *See*
*First Am. Corp. v. Edwards*, No. 10-708, --- S. Ct. ---, 2011 WL 2437037 (U.S. June 20, 2011).

1    alleged the injury necessary to state a claim under either Civil Code section 3344 or the UCL.

2    Both of these statutes require facts demonstrating injury to state a claim.  *See* Cal. Civ. Code

3    § 3344(a) (using the word "injured" four times to state that defendants may only be liable to "the

4    person or persons injured"); Cal. Bus. & Prof. Code § 17204 (requiring both injury in fact and a

5    loss of money or property to state a claim).  Likewise, the common law cause of action for

6    misappropriation requires "resulting injury."  (Dismissal Order at 4 (quoting *Newcombe v. Adolf

7    Coors Co.*, 157 F.3d 686, 692 (9th Cir. 1998)).)  As the Court noted previously, nothing in the

8    common law or section 3344 suggests that a Plaintiff states a claim without plausible allegations

9    of harm from the misappropriation.  (Dismissal Order at 8-9.)  And, as discussed below (*infra*

10   § IV(C)(1)), this is doubly true under the UCL, which requires both injury in fact and a "loss of

11   money or property."  (*Id.* at 11.)

12        Because Plaintiffs have not alleged injury in fact, the FAC should be dismissed.

13        **B.    Plaintiffs Fail to State a Claim for Violation of the Common Law or Statutory
            Right of Publicity (First and Second Claims).**

14

15        Among the elements a plaintiff must allege to state a claim for violation of either the

16   common law or statutory right of publicity is "resulting injury."  (Dismissal Order at 4 (quoting

17   *Newcombe*, 157 F.3d at 692).)  Although the FAC contains more words than Plaintiffs' Original

18   Complaint, it nonetheless fails to solve (or even make an appreciable effort to solve) the

19   deficiencies in their Original Complaint.

20        This Court dismissed Plaintiffs' misappropriation claims in the Original Complaint for

21   lack of injury.  Recognizing that "'[r]esulting injury is the *sine qua non* of a cause of action for

22   misappropriation of name'" (Dismissal Order at 8 (quoting *Slivinsky v. Watkins-Johnson Co.*, 221

23

24   The Court granted the writ to address the following question: Does a purchaser under the Real
     Estate Settlement Protection Act, who alleges a violation of that statute which does not affect the
25   price, quality or other characteristics of the settlement service, have "standing to sue under Article
     III, § 2 of the United States Constitution, which provides that the federal judicial power is limited
26   to 'Cases' and 'Controversies' and which this Court has interpreted to require the plaintiff to
     'have suffered an 'injury in fact,' *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)?"  *See*
27   Petition for a Writ of Certiorari, *First Am. Corp. v. Edwards*, No. 10-708, --- S. Ct. ---, 2011 WL
     2437037 (2011),  2010 WL 4876485.
28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11.

FACEBOOK'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
NO. 10-CV-05282-RS

1   Cal. App. 3d 799, 807 (1990))), the Court explained that "Plaintiffs [had] not shown how the

2   mere disclosure to their Facebook friends that they have employed the Friend Finder service . . .

3   cause[d] them any cognizable harm . . ." (*id.* at 9).[6]  The Court emphasized that harm is essential

4   to state a misappropriation claim, and that merely alleging use of one's name and/or likeness is

5   insufficient.  (*Id.*)  "Nothing in *Miller* [*v. Collectors Universe, Inc.*, 159 Cal. App. 4th 988 (2008)]

6   or the statute," the Court held, "suggests that a plaintiff is entitled to the minimum damages

7   award even in the absence of showing any harm."  (Dismissal Order at 9.)  The Court noted that

8   "Plaintiffs [had] not even alleged that they suffered 'injury to [their] feelings'"—the "gist" of a

9   misappropriation claim—and certainly had not alleged any facts "that would suffice to show a

10  plausible entitlement to relief."  (*Id.*)  The Court instructed that to survive a motion to dismiss

11  Plaintiffs "must, at a minimum, plead that they suffered mental anguish as a result of the alleged

12  misappropriation, and a plausible supporting factual basis for any such assertion."  (*Id.*)

13      Despite these clear instructions, the FAC does not contain the minimum allegations

14  identified as necessary by the Court.  The FAC does not allege in any way that Plaintiffs suffered

15  emotional injury as a result of Facebook's alleged use of their name and/or likeness in association

16  with Friend Finder.  Their failure to do so demonstrates that they cannot plausibly advance

17  allegations of emotional injury resulting from the alleged use.

18      Instead, Plaintiffs rely on conclusory allegations that they were deprived of the

19  "reasonable value" of their names and/or likenesses (*see*, *e.g.*, FAC ¶¶ 15-16, 59, 61-62) and that

20  they have a "property interest" in their names and likenesses (*see*, *e.g.*, FAC ¶¶ 16, 42-43).  But,

21  as discussed above, courts have rejected such arguments.  (*Supra* § IV(A) at 8-9 (citing

22  authorities).)  And Plaintiffs allege no facts suggesting that they ascribe any economic value to

23  their names and/or likenesses.  For instance, they do not allege that they have ever attempted to

24  use, or were in any way precluded from using, their names or likenesses in connection with any

25

26  _____

    [6] (*Cf. id.* at 1 ("As a 'social networking' internet site, Facebook exists because its users *want* to
27  share information—often about themselves—and to obtain information about others, within and
    among groups and subgroups of persons they already know or with whom they become
28  acquainted through using Facebook.").)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12.

FACEBOOK'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
NO. 10-CV-05282-RS

1    advertisements or promotions.  Indeed, Plaintiffs admit that they are "not famous" and there may

2    not be a "ready market value" for the use of their names or likenesses.   (FAC ¶¶ 58, 60.)

3    Plaintiffs' omissions in this respect are significant, since the Court already rejected Plaintiffs'

4    allegations that they had a "commercial interest" in their names and/or likenesses merely because

5    they are known to their Friends on Facebook.  (Dismissal Order at 10 (dismissing Plaintiffs'

6    Lanham Act claim).)

7          Thus, Plaintiffs have not alleged any emotional injury or a "plausible supporting factual

8    basis" that they suffered an economic loss to any value that they held in their names or likenesses.

9    Instead, they have merely superficially revised the same basic allegations that this Court has

10   already rejected.  (Dismissal Order at 8-9.)  Their claims should be dismissed with prejudice.[7]

11

12

13

14

15

16   _____

     [7] The Court's Dismissal Order disagreed with Facebook's argument that, as Facebook Users who
17   are bound by the terms which govern use of the website, Plaintiffs consented to the use of their
     names and likenesses for purposes of providing Facebook's services.  (Dismissal Order at 4-7.)
18   The Court found that "[n]othing in the provisions of the Terms documents to which Facebook has
     pointed constitutes a clear consent by users to have their name or profile picture shared in a
19   manner that discloses what services on Facebook they have utilized, or to endorse those services."
     (*Id.* at 5-7.)  Facebook continues to contend that Plaintiffs consented to such uses based on SRR
20   § 2 (providing Facebook a license to all IP content, including profile photos, posted by Users) and
     Privacy Policy §§ 3 and 5 (informing Users that their names and likenesses are publicly available
21   and may be used to provide Facebook services such as Friend Finder).   Especially now that
     Plaintiffs have abandoned their specious allegations that Facebook used the names or likenesses
22   of Users who never used Friend Finder, it is even more clear that Plaintiffs have consented to the
     uses alleged.   Statements in the SRR and Privacy Policy inform Users that their "information"
23   (defined as "facts and other information about you, *including actions you take*"), may be used "to
     make suggestions to you and other users on Facebook" and that Facebook "may also suggest that
24   you use certain tools and features *based on what your friends have used*." (*See* Muller Decl. Ex.
     A § 17.3 (SRR) (defining the term "information" (emphasis added)); *id.* Ex. B § 5 (Privacy
25   Policy) (describing Facebook's use of information "[t]o make suggestions" (emphasis added))).
     Plaintiffs thus fail to meet the "lack of consent" element required for their misappropriation
26   claims.  *See Newcombe*, 157 F.3d at 692.  Although Facebook does not move to dismiss the FAC
     on this basis, Facebook reserves the right to assert the consent argument in future proceedings if
27   necessary.

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13.

FACEBOOK'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
NO. 10-CV-05282-RS

**C.    Plaintiffs Fail to State a Claim for Violation of the UCL (Third Claim for Relief).**

**1.    Plaintiffs Do Not Satisfy the UCL's More Restrictive Standing Requirements.**

As discussed above, Plaintiffs lack standing under Article III because they have not alleged injury in fact.  They also do not have standing to bring a claim under the UCL because they still have not alleged—and cannot allege—that they "suffered injury in fact and ha[ve] lost money or property as a result of the unfair competition."  Cal. Bus. & Prof. Code § 17204; *see also Californians for Disability Rights v. Mervyn's, LLC,* 39 Cal. 4th 223, 227 (2006); *Animal Legal Defense Fund v. Mendes*, 160 Cal. App. 4th 136, 145, 148 (2008).  As the Court noted in the Dismissal Order, the California Supreme Court has recently "reaffirm[ed] . . . that standing under the [UCL] is limited to persons who have 'lost money or property' and that the standard is therefore more restrictive standard than the Constitutional standing requirement of 'injury in fact.'"  (*See* Dismissal Order at 11 (italics omitted) (citing *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 323-24 (2011).)  *See also Kwikset*, 51 Cal. 4th at 322 (stating that the UCL's "narrower" standing requirements include "a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*") (emphasis in original).

Plaintiffs' repeated assertions—amounting to no more than unsupported legal conclusions—of their belief that Facebook owes them a portion of its advertising revenues for the alleged inclusion of their names or likenesses in statements regarding Friend Finder have *already* been rejected by this Court as failing to meet the UCL's standing requirement of "'lost money or property.'"  (*See* Dismissal Order at 11.)  In dismissing Plaintiffs' UCL claim, the Court noted that "[i]n light of the requirement to show a loss of money or property, it is not clear that plaintiffs necessarily will be able to allege a basis for standing  under this claim . . . ."  (*Id.*)  Indeed, having paid no money whatsoever to Facebook—which is, and always has been, free— Plaintiffs are unable to allege a basis for standing under the UCL.  *See, e.g.*, *In re Facebook Privacy Litig.*, No. C 10-02389 JW, --- F. Supp. 2d ----, 2011 WL 2039995, at *7 (N.D. Cal. May 12, 2011) (Ware, C.J.) (reasoning that plaintiffs could not allege a loss of money or property because they "received [Facebook's] services for free").

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14.

FACEBOOK'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
NO. 10-CV-05282-RS

1    Plaintiffs now claim they suffered "loss of money and (intellectual) property." (FAC

2    ¶ 42; *see also id.* ¶ 16 ("Thus, Facebook has misappropriated Plaintiffs' intellectually [sic]

3    property without providing compensation, which constitutes both a loss of money and property");

4    *id.* ¶ 84 ("Plaintiffs have lost money (compensation) and property (intellectual)").)  But other than

5    the single adjective—"intellectual"—inserted within parentheses, Plaintiffs do not include any

6    allegations about what this purported "(intellectual) property" is.  Such a superficial allegation is

7    insufficient to save their UCL claim.  *See Iqbal*, 129 S. Ct. at 1949 (pleadings offering "labels and

8    conclusions" or "a formulaic recitation of the elements," or "tender[ing] naked assertions devoid

9    of further factual enhancement," are insufficient under Rule 8(a) (quoting *Twombly*, 550 U.S. at

10   555, 557)).  Plaintiffs have not alleged facts sufficient to show an intellectual property interest in

11   the names, likenesses, photographs, or images they posted to Facebook.  For example, Plaintiffs

12   allege a loss of "(intellectual) property by having their names likenesses, and/or images

13   misappropriated." (FAC ¶ 42.)  But Plaintiffs fail to show how they could have an intellectual

14   property interest in their names, or to allege that the intellectual property interests (if any) in

15   likenesses or images they posted to Facebook were theirs as opposed to someone else's (for

16   instance, the person who took the photographs).

17       Furthermore, even if Plaintiffs' "(intellectual) property" allegation were properly

18   supported (which it is not), it would still fail.  *First*, the Court has *already* found that, even under

19   a more limited reading of Facebook's SRR than Facebook asserts, the SRR "gives Facebook a

20   worldwide license to reproduce any pictures or text posted by a user, subject to any privacy

21   settings, that would insulate it from any *copyright* claims by the user . . . ." (Dismissal Order at 6

22   (emphasis in original).)  Plaintiffs' claim thus would clearly fail if it is premised on copyright

23   law.  The Court has already rejected Plaintiffs' Lanham Act claim, holding that Plaintiffs had not

24   demonstrated their identities were "akin to a trademark" (Dismissal Order at 10), and Plaintiffs

25   have chosen not to reassert that claim.

26       *Second*, Plaintiffs still do not allege how their supposed "(intellectual) property" interest

27   "has been economically diminished" by Facebook as required by the UCL.  Nothing in the FAC

28   alleges that the right to use Plaintiffs' names or likenesses had any readily ascertainable value or

Cooley LLP
Attorneys At Law
San Francisco

15.

Facebook's Motion to Dismiss
First Amended Complaint
No. 10-cv-05282-RS

1   that it was was impaired in any way.  *See Folgelstrom*, 195 Cal. App. 4th at 994 (rejecting UCL

2   claim where plaintiff's theory of harm rested on mere speculation that the value of information

3   was diminished by defendant's alleged use of it, and finding that the fact that the information had

4   value to defendant—even such that defendant received a license fee for its use—"does not mean

5   that its value to plaintiff was diminished in any way"); *see also Kwikset Corp.*, 51 Cal. 4th at 322

6   (2011) (stating that to sustain a UCL claim, a plaintiff must allege "a loss or deprivation of money

7   or property sufficient to qualify as injury in fact, i.e., *economic injury*" (emphasis in original)).

8          Because Plaintiffs cannot show standing under the UCL, that claim should be dismissed

9   with prejudice.

10          **2.      The FAC Fails to State a Claim Under any of the Three Prongs of the**

11          **UCL.**

12          Although it is not clear from the FAC, Plaintiffs appear assert their UCL claim under all

13   three prongs of the UCL: the "unlawful" prong, the "unfair" prong, and the "fraudulent" prong.

14   Even if Plaintiffs had standing to bring a claim under the UCL (which they do not), their claim

15   under any of the three prongs would still fail.

16          **a.      Plaintiffs Have Not Stated an "Unlawful"-Prong Claim.**

17          Regarding the "unlawful" prong, as in Plaintiffs' Original Complaint, the FAC's

18   "unlawful" claim under the UCL is "derivative of, and dependent on the viability of [Plaintiffs']

19   other claims." (Dismissal Order at 10.)  But Plaintiffs have failed to allege facts sufficient to state

20   claims for common law and statutory misappropriation (*see supra* § IV(B)), and, thus, their UCL

21   claim under the "unlawful" prong also fails.  *See Whiteside v. Tenet Healthcare Corp.*, 101 Cal.

22   App. 4th 693, 706 (2002) ("unlawful" claim under UCL fails where there is no claim based on

23   underlying statute); *see also Avila v. Countrywide Home Loans*, No. 10-CV-05485-LHK, 2010

24   WL 5071714, at *6 (N.D. Cal. Dec. 7, 2010) (dismissing UCL claim premised on violation of

25   underlying law for which plaintiff had failed to state claim).

26          Plaintiffs also allege in conclusory fashion that Facebook's alleged actions "are 'unlawful'

27   as violations of Section 5(a) of the Federal Trade Commission Act . . . ."  (FAC ¶ 82.)  Section

28   5(a) provides that "[u]nfair methods of competition in or affecting commerce, and unfair or

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16.

FACEBOOK'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
NO. 10-CV-05282-RS

1    deceptive acts or practices in or affecting commerce, are hereby declared unlawful."  15 U.S.C. §

2    45(a) (codifying Section 5(a) of the Act).  Plaintiffs do no more than mention Section 5(a) in this

3    single sentence, failing to allege even which part of Section 5(a) they suggest was violated or how

4    Facebook allegedly violated the section.  Plaintiffs thus fail to satisfy even the minimal pleading

5    requirements of Rule 8(a).  *See, e.g.*, *Iqbal*, 129 S. Ct. at 1949 (pleadings offering "labels and

6    conclusions" or "tender[ing] 'naked assertions' devoid of 'further factual enhancement'" are

7    insufficient under Rule 8(a) (quoting *Twombly*, 550 U.S. at 555, 557)).  To the extent this claim is

8    based on the "deceptive acts or practices" portion of the statute, it does not comply with Rule

9    9(b)'s more demanding requirement that claims grounded in fraud be pleaded with particularity.

10   *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1122 (9th Cir. 2009).  *See also infra* § IV(C)(2)(c)

11   (discussing "fraudulent" prong).  Therefore, any claim under the "unlawful" prong should be

12   dismissed.

13                   **b.**          **Plaintiffs Have Not Stated an "Unfair"-Prong Claim.**

14              Plaintiffs have not alleged facts showing that Facebook acted "unfairly" within the

15   meaning of the UCL.  Plaintiffs cannot state a claim under the UCL's "unfair" prong merely by

16   stating their conclusion that "[t]he foregoing actions are . . . unfair within the meaning of the state

17   unfair competition law" (FAC ¶ 82).  *Jones v. PNC Bank, N.A.*, 10-CV-01077-LHK, 2010 WL

18   3325615, at *3 (N.D. Cal. Aug. 20, 2010) ("Simply concluding that an act is 'unfair' does not

19   meet the standard for stating a claim under the UCL." (citation omitted)).

20              Rather, California courts have held that in order to state a claim for an "unfair" business

21   practice in the context of a UCL consumer action,[8] a plaintiff must allege facts sufficient to

22   establish: (1) substantial consumer injury; (2) that the injury is not outweighed by countervailing

23   benefits to consumers; and (3) that the injury is one that consumers could not reasonably have

24   avoided.  *Camacho v. Auto. Club of S. Cal.*, 142 Cal. App. 4th 1394, 1403 (2006) (referring to

25   _____

26   [8] In *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 185
     (1999), the California Supreme Court reviewed definitions of "unfair" that had been developed by

27   the lower courts and concluded they were "too amorphous and provide[d] too little guidance to
     courts and businesses."  The Court adopted a test for competitor actions, but did not decide what

28   test should apply in consumer actions.  *Id.* at 185-87.

1  factors under section 5 of Federal Trade Commission Act, codified at 15 U.S.C. § 45(n)); *accord*

2  *Davis v. Ford Motor Credit Co.*, 179 Cal. App. 4th 581, 596 (2009).  But, as discussed above,

3  Plaintiffs have not sufficiently pled *any* injury, let alone a "substantial" injury.  Nor have they

4  suggested that any such injury is "not outweighed by countervailing benefits to consumers."  On

5  the contrary, they acknowledge that, via Friend Finder (a free utility), Users can connect with

6  other Facebook Users (FAC ¶ 11 (alleging that the Friend Finder service permits Users to upload

7  contacts to Facebook, which then "searches for common uploaded contacts as a basis to suggest

8  new 'friends'"), and connecting to others is one of the primary reasons people join Facebook.

9  Therefore, any claim under the "unfair" prong should be dismissed.[9]

10           **c.       Plaintiffs Have Not Stated a "Fraudulent"-Prong Claim.**

11           Finally, to the extent Plaintiffs are attempting to state a claim under the UCL's

12  "fraudulent" prong (which is not clear from the FAC), that claim fails because it does not meet

13  the pleading requirements of Rule 9(b).  *See Kearns*, 567 F.3d at 1125  (claims brought under the

14  fraud prong of the UCL must be pled with particularity under Rule 9(b)).  To adequately plead

15  claims sounding in fraud, the FAC must "state with particularity the circumstances constituting

16  fraud or mistake, including the who, what, when, where, and how of the misconduct charged.  In

17  addition, the plaintiff must set forth what is false or misleading about a statement, and why it is

18  false."  *Avila*, 2010 WL 5071714, at *4 (internal quotation marks and citation omitted).  Plaintiffs

19  must allege with particularity facts demonstrating (1) a misrepresentation, (2) knowledge of its

20  falsity, (3) intent to induce reliance, (4) that the reliance was justified, and (5) damages.  *Kearns*,

21

22  [9] After *Cel-Tech*, courts have used two other tests.  *Drum v. San Fernando Valley Bar Ass'n*, 182
   Cal. App. 4th 247, 256 (2010).   One requires that the unfair conduct be contrary to some
23  legislatively declared public policy that is "tethered to specific constitutional, statutory, or
   regulatory provisions."  *Id.* (citation omitted).  The other, essentially a pre-*Cel-Tech* test, requires
24  that the business practice be "immoral, unethical, oppressive, unscrupulous or substantially
   injurious to consumers" and that the court "weigh the utility of the defendant's conduct against
25  the gravity of the harm to the alleged victim."  *Id.* at 256-57 (citation omitted).  Plaintiffs fail to
   allege unfairness under either test, as they allege neither a legislatively declared public policy
26  limiting Facebook's use of information voluntarily posted by users that is "tethered to specific
   constitutional, statutory, or regulatory provision" nor harm substantial enough to outweigh the
27  utility of Facebook's services.

28

567 F.3d at 1126 (citing *Engalla v. Permanente Med. Group, Inc.*, 15 Cal. 4th 951, 974 (1997)). The FAC does not allege with specificity which statements by Facebook purportedly were fraudulent or constituted alleged misrepresentations.  Nor does the FAC allege with specificity Facebook's knowledge of such statements' falsity, any reliance by the named Plaintiffs, or that Facebook intended to induce Plaintiffs' reliance.  In short, Plaintiffs' FAC does not "state with particularity the circumstances" surrounding any alleged fraud or misrepresentation, and thus fails to state a claim.

The FAC vaguely suggests that although Facebook's "Principles" posted on its website articulate goals such as "giving users 'freedom,' 'ownership' and 'control,'" there are "statements on other parts of its website which potentially affect whether Facebook really offers its users 'freedom,' 'ownership' and 'control' over use of their own name and likeness to promote or advertise the services of Facebook or third parties."  (FAC ¶¶ 77-78.)  The FAC alleges that "[n]owhere in any of Facebook's lengthy policy statements does Facebook inform users that Facebook may use of [sic] their names and likeness [sic] to promote services of Facebook, such as Friend Finder, nor does Facebook provide any way for users to grant or deny consent to such uses."  (*Id.* ¶ 79.)  But these allegations do not demonstrate misrepresentations, let alone knowing misrepresentations, particularly when evaluated in light of the very website materials on which the FAC relies and of which the Court may take judicial notice.  In fact, Facebook's website terms inform Users that their "information" (defined as "facts and other information about you, including actions you take") may be used to "make suggestions to you and other users on Facebook" and that Facebook "may also suggest that you use certain tools and features based on what your friends have used." (*See* Muller Decl. Ex. A § 17.3 (SRR) (defining the term "information"); *id.* Ex. B § 5 (Privacy Policy) (describing Facebook's use of information "[t]o make suggestions").)  Thus, Users are told that "facts and other information about [them]" (which encompasses their names and profile pictures) and the "actions [they] take" on the site (which encompasses use of Friend Finder) may be used to suggest to their Friends that they use the same Facebook "tool[] and feature[]."  This term describes the conduct that Plaintiffs now complain of: that "Facebook has posted the names and likenesses of a user's friends on that user's

Cooley LLP
Attorneys At Law
San Francisco

19.

Facebook's Motion to Dismiss
First Amended Complaint
No. 10-cv-05282-RS

Facebook.com page," along with a statement that the User's Friends "found friends using the Friend Finder," and suggesting that the User "[g]ive it a try." (FAC ¶¶ 12, 38.) Plaintiffs may not survive a motion to dismiss by omitting the very documents on which they rely—and which actually prove the pleaded facts false. *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

In light of these disclosures in the SRR and Privacy Policy, Plaintiffs cannot allege that Facebook made a false representation or otherwise deceived them regarding the use of their names and likenesses in connection with a service (Friend Finder) they allegedly used. Where explanatory language is clear and unambiguous, the language defeats a fraud-based claim under section 17200 as a matter of law. *See Freeman v. Time, Inc.*, 68 F.3d 285, 289-90 (9th Cir. 1995) (affirming dismissal of UCL claims where plaintiff could have learned terms by doing a "sufficient reading" of the mailer); *Van Ness v. Blue Cross of Cal.*, 87 Cal. App. 4th 364, 376 (2001) (dismissing claim that insurance policy was deceptive under fraud prong of 17200 where the policy clearly stated the terms of coverage).

Therefore, any claim under the "fraudulent" prong should be dismissed.

**D.      Plaintiffs' Claims Should Be Dismissed with Prejudice.**

Plaintiffs' claims should be dismissed with prejudice. Even with the guidance provided by the Court's Dismissal Order, Plaintiffs have been unable to allege legally sufficient claims. Instead, they have used their opportunity to amend to make superficial changes to their original, deficient allegations. Given Plaintiffs' failure to put forward legally sufficient allegations, granting Plaintiffs leave to amend would be futile and dismissal with prejudice is appropriate. *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998) (leave to amend should not be granted where amendment would be futile); *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (a "district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint" (citation omitted)).

**V.      CONCLUSION**

For the foregoing reasons, Plaintiffs' First Amended Class Action Complaint should be dismissed with prejudice.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20.

FACEBOOK'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
NO. 10-CV-05282-RS

Dated: August 1, 2011

COOLEY LLP

/s/ Matthew D. Brown
Matthew D. Brown (196972)

Attorneys for Defendant FACEBOOK, INC.

1228851/SF

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21.

FACEBOOK'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
NO. 10-CV-05282-RS